ANDREW J. PERTEET

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

1. CONTINUANCE—*on ground of absent witnesses.*  There is no error in
overruling a motion for a continuance based on the ground of the absence
of witnesses, in a capital case, where the testimony expected from one of
them would be of no benefit to the accused, and the affidavit fails to
show that the attendance of the other witness, a non-resident, can ever be
procured.

2. CRIMINAL PRACTICE—*witnesses not named on indictment.*  The prose-
cution in a criminal case is not restricted to the witnesses whose names

are indorsed on the back of the indictment, a list of which is required to be furnished the accused, especially when notice is given that others will be called.

3. EVIDENCE—*of threats to defendant not heard by him.* On the trial of one for the murder of his wife, where the proof showed that the accused left the house where the homicide occurred, the defense will not be allowed to prove threats of violence against the defendant, which he did not hear or had any knowledge of at the time, for the purpose of showing a pretext for his leaving.

4. WRIT OF ERROR—*in capital case, does not take away the jurisdiction of the inferior court.* The allowance of a writ of error in a capital case does not deprive the lower court of its jurisdiction, but only stays its authority to act or proceed until the determination of the writ of error.

5. SAME—*filing remittitur or remanding order on reversal not necessary to jurisdiction.* The filing of a *remittitur* or remanding order of this court in the lower court, upon reversal, is not necessary to the jurisdiction of the latter court to proceed with the cause. The omission to file a remanding order is simply an irregularity, that may be waived.

6. Where a judgment convicting one of murder was reversed, and the defendant appeared in the court in which the conviction was had, and read the opinion of this court, and, after the cause was redocketed, asked for and obtained a change of venue, it was *held*, that he could not afterwards object to the action of the court on the ground that no remanding order had been filed.

7. CRIMINAL LAW—*defendant may waive his legal rights.* While it is true that a defendant in a capital case will not be presumed to have waived any of his rights, yet he may waive any of them, but the record must expressly show his consent thereto.

8. CHANGE OF VENUE—*objection to jurisdiction waived.* If a defendant charged with murder, on his own motion, procures a change of venue to another county, and submits to a trial in the court to which the cause is sent, without objecting to the jurisdiction of the court trying him, or of the court to award a change of venue, he will waive all objection to the jurisdiction of the court.

9. WRIT OF ERROR—*determined by inspection of the record.* Except on a plea of extrinsic matters, such as a release of errors, etc., a cause brought to this court on writ of error must be determined solely upon the record sent up from the inferior court. Per McALLISTER, J.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an indictment against Andrew J. Perteet, for the murder of his wife, Martha F. Perteet, by cutting her throat with a razor. This case was before this court at the September term, 1872, and is reported in 65 Ill., page 230. The opinion of the court gives a statement of the facts of the case.

Mr. J. H. KNOWLTON, for the plaintiff in error.

Mr. CHARLES H. REED, State's Attorney, for the People.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

On the 20th day of November, A. D. 1871, Andrew J. Perteet was indicted for murder, in the Criminal Court of Cook county. On the 22d day of the same month, he plead not guilty, and, on the 25th, filed a petition for a change of venue. The motion for a change of venue was overruled.

On the 20th of December, 1871, the cause was tried, and the verdict of the jury was, guilty of murder, and they fixed the penalty that defendant should suffer, death by hanging. This was followed by a judgment of the court that the defendant be hanged on the 12th day of January, 1872.

The defendant brought the record to this court by writ of error, and the judgment of the criminal court was reversed and the cause remanded, on the ground that the criminal court erred in not granting a change of venue.

On the 20th day of November, 1872, the record of the criminal court shows the following proceedings in the cause of *The People* v. *Andrew J. Perteet:*

"This day again come the said People, by Charles H. Reed, State's Attorney, and the said defendant, as well in his own proper person as by his counsel, also comes; and it appearing to the court, from a certified copy of the opinion of the Supreme Court of this State, produced and read to the court by the said defendant's counsel, that the judgment of this court in this cause has been reversed, and this cause remanded

for another trial, it is ordered that this cause be, and the same is hereby, re-docketed.

"And now comes the said defendant, and presents his sworn petition for a change of venue in this cause, and the court, being fully advised in the premises, doth order that the venue in this cause be changed to the county of Will, and that the clerk of this court transmit to the clerk of the circuit court of said Will county all the papers on file in this cause, with a true and correct copy of all orders and proceedings of this court had and entered therein, and that the said defendant be remanded into the custody of the sheriff of Cook county."

The venue of the cause having been changed to Will county, at the January term, 1873, of the circuit court of Will, the defendant entered a motion for a continuance. The motion was overruled, a trial had, and, on the 16th of January, 1873, the jury returned a verdict of guilty, and fixed the penalty that he suffer death by hanging.

The judgment of the court on the verdict was, that the defendant, Perteet, be hanged on the 14th day of February, 1873. Again the defendant brings the record to this court, by writ of error, and urges a reversal of the judgment, for various errors.

We will examine the questions in the order in which they arose during the progress of the trial of the cause.

The first decision of the circuit court, to which exception was taken, was the overruling of defendant's motion for a continuance. In support of the motion, two affidavits were filed—one for the purpose of procuring the attendance of one Williams, who, on the first trial, was a witness for the people. In appears, by the affidavit, that, on the evening of the murder, this Williams was walking on Polk street, in the direction of Perteet's house, and at the time he heard the cry of murder, he saw the defendant at the corner of the alley, on Polk street, about a half block distant from the house, going north.

. How this evidence could be material for the defendant, it is difficult to see. On the first trial, this evidence was, no doubt, offered by the people for the purpose of showing the defendant was at or near the house where the murder was committed, at the time or soon after it occurred, in order to connect him with the crime; and for the defendant to show that he was leaving the house at the time the cry of murder was given, would certainly be evidence against him, rather than in his favor.

In the other affidavit filed, it is alleged that one Harvey was a material witness; that he lived in Missouri, but whether his attendance could ever be procured, is entirely uncertain, from the affidavit. No sufficient facts are set out in the affidavit by which the court could see that the evidence of Harvey could ever be obtained, which is necessary in a criminal case, where the witness is out of the State, and can not be reached by the process of the court. *Eubanks* v. *The People,* 41 Ill. 486. We are, therefore, of opinion the motion for a continuance was properly overruled.

The next question that arose was, the decision of the court in allowing H. Merrill and James Shelton, two witnesses whose names were not on the indictment, to testify on the part of the people. The record shows that, about three weeks before the trial, the attorney of defendant was notified that these witnesses would be called by the people, and, on the morning before the trial was begun, a written notice was served on the defendant's attorney, that these witnesses would be used on the trial.

This court has repeatedly held that the people are not restricted to the witnesses whose names are indorsed on the back of the indictment, a list of which is required to be furnished defendant previous to arraignment. *McKinney* v. *The People,* 2 Gilman, 552; *Gardner* v. *The People,* 3 Scammon, 89; *Gates* v. *The People,* 14 Ill. 436. In many cases, the construction of the law contended for by defendant's

counsel would defeat the ends of justice, and turn loose upon society the worst of criminals.

The next question that arose was, the refusal of the court to permit the witness Shelton, on cross-examination, to answer this question: Did you hear any cries, or noisy threatening by the crowd that they would hang Perteet?

The object of the question, as stated by the counsel for defendant, was, to show that Perteet left the house where the murder was committed, and surrendered himself to the officers of the law, for the purpose of protecting himself from mob violence.

The defense did not seek or offer to show that Perteet heard any of these threats, if any were made, or that he had any knowledge that any were made. Indeed, the evidence clearly shows that Perteet left the house before the crowd had assembled. The answer to the question would not have tended to explain the defendant's conduct, unless he knew that threats were made; and on this point, we perceive no error in the ruling of the court.

The next point relied upon by the defendant, to reverse the judgment of the circuit court, is, that the record does not show a *remittitur* from this court, and, for that reason, the criminal court of Cook county had no authority to change the venue of the cause, and the circuit court of Will county had no right or jurisdiction to try the defendant.

There is a marked distinction, in many respects, between the English practice and our own in criminal cases. The rigor of the English law, at an early day, led humane judges to resort to technical rules to save the life of a criminal who was on trial for stealing the value of a few shillings, who was denied the right of counsel or the attendance of witnesses to vindicate his innocence.

Under our laws, a criminal stands in entirely a different attitude. He has a right to a speedy trial, before a jury and court that are free from bias or prejudice. The laws of the land furnish him able counsel for his defense, whether he has

money or not. The process of the court is at his command to compel the attendance of witnesses. In fact, our laws afford every facility for one charged with crime to obtain a fair and speedy trial. This being the case, many of the technical rules in the English practice are not in use under ours.

Under the English practice, the writ of error took the entire record from the lower court to the King's Bench, and the *remittitur* transmitted the entire record to the inferior court. Under our practice, however, the writ of error only brings a copy of the record from the lower court to the Supreme Court, and the *remittitur* does not transmit a record back to the lower court, but it is simply a copy of the final order or judgment of this court, and its only mission is, to inform the lower court of the action of the Supreme Court in the cause, with directions to proceed.

It is argued that the allowance of a writ of error in a capital case takes the jurisdiction of the cause from the circuit court. This position is not tenable. The circuit court retains the original record in the cause. Its jurisdiction of the cause is not taken away, but its power and authority to act or proceed in the cause are *stayed*. The statute (Gross, 207) reads: "The allowance of such writ of error shall be sufficient authority to the clerk of the Supreme Court to issue a *supersedeas to stay* the execution of the sentence of death, but not the discharge of the prisoner from jail." Jacob, in his Law Dictionary, says, a *supersedeas* is a writ that lies in a great many cases, and signifies, in general, a command *to stay* some ordinary proceedings at law, on good cause shown, which ought otherwise to proceed. This court, in the case of *Blackerby et al.* v. *The People,* 5 Gilman, 267, said, the order allowing a *supersedeas* does not operate as a *suspension* of the judgment until the bond is filed and the writ of error issues. When these proceedings are had, the clerk issues the certificate prescribed by the sixth rule of this court, the object of which is, to notify those interested that all proceedings on the judgment are to be *stayed* until the determination of the writ of error.

12—70TH ILL.

It seems, then, that a writ of error does not oust the lower court of jurisdiction. It only has the effect to *suspend* the power of such court until final action is had in the appellate court.

It is true, when final action is had in this court, it is necessary to file a *remittitur* in the circuit court; but the question that arises in this case is, was the filing of the *remittitur*, it not being jurisdictional, waived by the defendant. The whole scope and office of the *remittitur* in a capital case, where the judgment is reversed, is, to inform the circuit court what the decision of this court was. The *remittitur* is nothing more nor less than the final order of this court in the cause.

Instead of, and in lieu of, the *remittitur*, the defendant himself, as shown by the record, filed in the criminal court a certified copy of the opinion of this court in the cause.

This evidence produced to the criminal court was not the best evidence—it was not the technical evidence the law required; but, at the same time, it proved to the court each and every fact that the *remittitur* would, had it been filed; and when the defendant himself produced this evidence of the action of this court, and called into action the powers of the criminal court, which were suspended by the writ of error, does it now lie in his mouth to object that the criminal court acted on insufficient evidence? Did he not, by his own voluntary act, waive evidence of a certain fact, which he now insists is error? In the case of *Nomaque* v. *The People*, Breese 109, it is said: "The prisoner in a capital case must be considered as standing on all his rights. He can not be considered as waiving any thing." In that case, however, it appeared that the indictment was not found by the grand jury, and no objection was made by the defendant in the circuit court, and the question arose, whether he had waived the objection.

In *Guykowski* v. *The People*, 1 Scammon, 476, the case of *Nomaque* v. *The People*, is referred to, and the same doctrine reiterated.

At a later period, however, in the case of *The People* v. *Scates*, 3 Scam. 351, the same question arose, and this court said: "It is said, that a prisoner, in a capital case, is standing on all his rights, and can waive none of them, nor his counsel for him, and reference is made to *Nomaque* v. *The People*, in support of this position. This case means nothing more than this, that a prisoner, in a capital case, is not to be presumed to waive any of his rights, but that he may, by express consent, admit them all away, can be neither doubted nor denied. He may certainly plead guilty, and thus deprive himself of one of the most valuable rights secured to the citizen, that of a trial by jury. If he can expressly admit away the whole case, then it follows that he can admit away part of it, but will not be presumed to have done so. The consent must be expressly shown, and this is the whole scope of the doctrine in the case referred to."

In the case of *McKinney* v. *The People*, 2 Gilman, 556, this court said: "A prisoner on trial, under our laws, has no right to stand by and suffer irregular proceedings to take place, and then ask to have the proceedings reversed on error on account of such irregularities. The law, by furnishing him with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglect, in proper time, to insist on his rights, he waives them."

In the case of *Chase* v. *People*, 40 Ill. 356, the doctrine laid down in Guykowski's case was reviewed by this court, and in that case it was said:

"The decision in Guykowski's case was placed upon the ground that, in a capital case, the accused stands on all his rights, and waives nothing which is irregular. As explained in the case of *The People* v. *Scates*, this means nothing more than, a prisoner in a capital case is not presumed to waive any of his rights, but he may, by express consent, admit them all away."

These decisions seem to settle the question.

But, independent of the settled and uniform decisions of this court on this question, since the case of *The People* v. *Scates*, we have a statute which seems to be directly in point. The statute, Gross, p. 787, provides "all questions concerning the regularity of proceedings in obtaining changes of venue, and the right of the court to which the change is made, to try the cause and execute the judgment, shall be considered as waived after trial and verdict."

In the case of *Gardner* v. *The People*, 3 Scam. 87, a question, in some respects analogous to the one in this case, arose, and the court, in that case, gave a construction to the statute quoted *supra*. The court said: " It is urged that the Morgan circuit court had no right to try the prisoner, because the record of the proceedings in Scott county was not properly certified by the clerk as required by the statute. No objection was made in the court below, before or after verdict, to the regularity of the proceedings in Scott county, or to the authentication of the same when changed to Morgan county. If the authentication of the record was defective, the prisoner should have availed himself of it in the circuit court before trial. Not having done so, the irregularity, if in fact any existed, is cured by the statute."

The defendant, in the circuit court of Will county, interposed no objection to the jurisdiction, to the power or right of the court to try the case. He voluntarily enters his motion in the criminal court for a change of venue; causes the venue to be changed to Will county; submits to a trial in the circuit court of Will, without objection to the jurisdiction, and, after the verdict of the jury is against him, he insists in this court that the criminal court had no power to change the venue, and that the circuit court of Will county had no right to try his case. Upon both principle and authority, we are of opinion that the defendant has waived the objections that he now, in this court, seeks to make. *Brennan et al.* v. *The People*, 15 Ill. 515.

This case has been submitted to a jury of Cook, and also of Will county. Both have found the defendant guilty, and that he has committed the highest crime known to the laws of the land. It is not at all probable that another jury would arrive at a different result. The evidence in the record not only shows that the defendant committed murder, but his wife, one whom he had sworn to protect, was the victim of his malice.

Perceiving no error in the record, the judgment of the circuit court of Will county is affirmed, with costs, and the court order that the prisoner, Andrew J. Perteet, shall be executed on the 12th day of December, A. D. 1873, between the hours of 10 o'clock A. M. and 4 o'clock P. M. of that day, and that this sentence shall be executed by the sheriff of Will county.

*Judgment affirmed.*

Mr. JUSTICE SCOTT: I am of opinion that it was error in the circuit court to refuse a continuance on the affidavits filed. The evidence sought to be procured was all important, to enable the accused to make his defense; and the diligence shown to procure the attendance of the witnesses, certainly as to one of them, was complete. It was not possible, under the circumstances, for the prisoner to do more.

Upon the question whether the court had jurisdiction to proceed again to try the cause, without a mandate from this court having been first filed, I do not desire to express an opinion at this time, further than to say that I do not concur in all of the reasoning of the opinion of the majority of the court on that point.

In view of the rulings of the court, and after a most careful consideration, it is my deliberate judgment there is error in the record, for which the judgment of the circuit court should be reversed.

Mr. JUSTICE MCALLISTER: It is an elementary proposition, that does not admit of controversy, that, upon writ of error in a criminal case, the cause must be determined solely

upon the record sent up to this court, and the only exception in civil cases, is, where there is a plea in this court to the assignment of errors, setting up extrinsic matters, such as a release of errors, etc. In the absence of such plea, the same rule obtains in civil cases.

Now, the record before us shows that, at the December term, 1871, of the criminal court, the plaintiff in error was convicted of murder, and sentenced to be hanged on the 12th day of January, 1872. Then the record shows that, at the November term, 1872, of that court, this entry was made: "This day again come the said People, by Charles H. Reed, State's Attorney, and the said defendant, as well in his own proper person as by his counsel, also comes; and it appearing to the court, from a certified copy of the opinion of the Supreme Court of this State, produced and read to the court by defendant's counsel, that the judgment of this court in this cause has been reversed, and this cause remanded for another trial, it is ordered that this cause be, and the same is hereby, re-docketed."

It is plain, beyond the possibility of cavil or doubt, that the criminal court assumed jurisdiction to retry plaintiff in in error upon the same indictment upon which he had before been tried and convicted, upon the mere production in, and reading to, the court, what is called an opinion of the Supreme Court, which was not even filed in the lower court, and without one scintilla of anything in the record which shows that a writ of error had ever been brought from this court to that judgment, or that the Supreme Court ever had any jurisdiction of the case.

The record further shows that, after the criminal court had thus assumed jurisdiction of the cause, the plaintiff in error made an application for a change of venue, which was allowed, and the venue changed to the circuit court of Will county, where, at the January term, 1873, of that court, he was forced to trial, against his objections; was convicted of murder, and sentenced to be hanged on the 14th day of February, 1873.

The case was brought here by writ of error, and it is assigned
for error that the Criminal Court of Cook county assumed
jurisdiction of the case at a term subsequent to several terms
after that at which a final judgment had been rendered against
the prisoner, without any authority in law so to do, and that
the subsequent conviction is, therefore, irregular and void.
In my opinion, that position is unanswerable, and I can not,
therefore, give my assent to either the reasoning or conclu-
sion of the majority of the court in that behalf. The reason-
ing is substantially this: That, inasmuch as the original
record is not brought to this court by writ of error, as in
England, but only a transcript of it, the case is to be deemed
as being meanwhile within the jurisdiction of the lower court,
whose power is merely stayed or suspended by the *supersedeas;*
that when the *supersedeas* becomes *functus officio,* by a judg-
ment of reversal in this court, then the jurisdiction of the
lower court becomes operative and without restraint, and that
the fact of such reversal may be shown by any, even secondary,
evidence which the lower court may regard as sufficient.

With all due respect to the opinion of my brethren, I am
constrained to say, that, in my judgment, this reasoning and
the doctrine embodied in it are wholly unsound, because it
excludes the operation of a vital and controlling principle,
which is this: when final judgment is rendered in the circuit
court, either in a civil or criminal case, and the term closes,
the court rendering such judgment ceases to have any juris-
diction over the parties or the subject matter, and can neither
grant a new trial nor revise any decision it has made in the
cause.

The leading case in this State, upon that question, is *Cook*
v. *Wood et al.* 24 Ill. 295. There, final judgment was ren-
dered at the April term, 1857. At the October term follow-
ing, a motion was made to set aside that judgment, and to
re-assess the damages, which was allowed. On error to this
court, the court said: "The case was not regularly on the
docket at the term at which the motion was made to set aside

the judgment. *The power of the court over the case had been previously exhausted, and was at an end,* and no power existed to decide on it again, or to change opinions once given, or make new decisions." This doctrine has been reiterated and affirmed by this court over and over again. So, in *The Bank of the United States* v. *Moss,* 6 How. 38, the Supreme Court of the United States, upon the same question, say: "The action was not regularly on the docket at the new term, in May following, when the court undertook to set the judgment aside. *The power of the court over the original action itself, or its merits,* under the proceedings then existing, *had been exhausted— ended."* In all these cases the original record remained in the circuit court. It is, therefore, clear and indisputable, that the criminal court, at the close of the December term, 1871, at which the first final judgment was rendered, lost all power over the cause. Its power was then exhausted, ended, irrespective of the fact, whether a writ of error was allowed or not. A copy of the sentence, made and certified by the clerk of the court, and delivered to the sheriff, constitutes his authority to inflict the penalty of death upon the prisoner. The sheriff is a mere ministerial officer, and the effect of the *supersedeas* is merely to stay his hands, and not those of the court; they are stayed by the exhaustion of power at the close of the term at which judgment was rendered. These propositions are all too clear to admit of argument. If the power of the criminal court over this case was exhausted, ended, by the rendition of final judgment at the December term, 1871, and the close of that term, as I have shown by the highest authorities, then does it not follow that the reasoning of the majority of the court is unsatisfactory, and the conclusion unsound?

The position of the majority of the court is, that the power still inheres in the lower court, and is merely suspended by the *supersedeas.* My position is, that the power is utterly gone, for the reasons stated. This, I conceive to be the hinging point of the discussion. For, if the power be utterly

gone, then it follows that the lower court must be re-invested with it, in a legal way, before any action can be taken in the cause by that court. If we go out of the record, and assume, what nowhere appears in it, that there was a writ of error from this court to that first judgment, then the legal effect was, to withdraw the case from the lower court, whose power over it was exhausted, to this court, and the cause became thereby pending in this court. We may travel still farther out of the record, and say that such case, upon error, was considered by this court, and an opinion filed which directed the clerk of this court to enter a judgment of reversal, and remanding the cause. Yet, inasmuch as it is not claimed in the opinion of the majority of the court that a judgment of reversal was, in fact, entered in this court, and as it is not true, in fact, that any mandate or process of *remittitur* ever issued from this court, I maintain that nothing has occurred which re-invested the criminal court with power or jurisdiction in this case after the close of the December term, 1871. To do so, it was requisite that the express mandate of this court should go in due form of law, not only reversing that judgment, but carrying the cause back to that court. If the doctrine of the majority opinion be the correct one, why may not the lower court proceed in every case, at its discretion, which has gone into final judgment there, upon the mere reversal here? Yet every lawyer knows that, when a case is brought here by writ of error or appeal, and is simply reversed, the court below has no power to act, unless it is also remanded. This doctrine of the common law is fully embodied in our statute in force at the time of the attempt to reinstate this cause: " When a cause or proceeding is remanded by the Supreme Court, upon a transcript of the order of the Supreme Court remanding the same *being filed* in the court from which the cause or proceeding was *removed*, and not less than ten days' notice thereof being given to the adverse party, or his attorney, *the cause or proceeding shall be reinstated therein.*"   Sess. Laws 1871–2, p. 351, sec. 83.

Nobody will claim that a copy of the opinion, which is a direction to the clerk as to what judgment shall be entered, and to the court below in respect to its rulings, is a transcript of the order of this court; nor can it be regarded as its equivalent. But here, a copy of an opinion, with nothing to show that any such case was ever before this court, was read, and that even not filed, and upon that, alone, the court below assumed to exercise a jurisdiction which had been utterly exhausted and ended. I maintain that this act of the lower court was irregular and void. But while the majority of the court do not concede that it is so, yet the opinion lays much stress upon the fact that an application was afterwards made on behalf of the prisoner for a change of venue. It must be remembered, that the record does not show that defendant's counsel moved to have the case re-docketed. But after the order re-docketing was made, he moved for a change of venue. My position, as is already shown, is, that, without a transcript of the final order of this court being filed, the court below was utterly without jurisdiction. If correct in this, it follows that the court had no authority to make any order in the cause, and the application by the prisoner could confer none, because it is an elementary rule, that consent can not confer jurisdiction of the subject matter. Suppose the question of a writ of error were wholly out of the case, and not appearing in the record, it should be so considered; that the sheriff had let the time go by for executing the prisoner under this first judgment, and the criminal court had ordered the prisoner brought into court, and, when brought in, had ordered his case to stand for another trial. The prisoner makes no voluntary appearance; he is brought in by force. Suppose, then, he moves for a change of venue, and it is granted, to Will county. He is taken, by force, to that county, and there tried and convicted. Would it be contended that, because he asked for a change of venue, he therefore revived the already exhausted jurisdiction of the criminal court, or conferred any upon the circuit court of Will county? Suppose a prisoner,

charged with felony, is ordered to stand for trial, without any indictment having been found against him, or on one which has never been presented and filed in the court. Would his taking a change of venue to another county confer jurisdiction?

In the case of *Rainey* v. *The People,* 3 Gilm. 71, the prisoner was arraigned upon an indictment which had never been presented in court. He applied for and took a change of venue to another circuit, where he was tried for murder, and found guilty of manslaughter. Upon error to this court, the conviction was reversed because the record did not show the returning of the indictment into the court wherein he was first arraigned. Why was this not waived by taking a change of venue? Simply because it was jurisdictional.

In *Livingston* v. *Rogers,* 1 Caines' R. 583, the case was taken to the court of errors, where the judgment of the court below was reversed and a *venire de novo* awarded, but which was never sued out. And the court, KENT, J., delivering the opinion, say: "The second trial was, consequently, without any authority, and, in our opinion, *altogether null and void.* There certainly never was an instance of a new trial had without any award by the court for the same, *and without any record of such award,* and such new trial held good, merely in consequence of the appearance of the defendant."

That was a civil case, where the defendant could appear voluntarily. This is a capital case, where the defendant is brought into court by force, and is to be regarded as standing upon all his rights, except such as he deliberately and expressly waives.

I am of the opinion that the judgment of the Will circuit court, upon which the plaintiff in error is ordered to be executed, " is altogether null and void."

I think, also, that there was error in overruling the motion for a continuance, and especially for the absence of Williams. The theory of the defense was, that the prisoner's wife committed suicide, as she had often threatened to do. The pris-

oner was infirm, very lame, and could get down stairs only slowly and with difficulty. The homicide took place up stairs. Now, by showing the prisoner so far away from the house at the time Williams met him, was for the purpose of raising the inference that the prisoner could not have inflicted the wound and, in his physical condition, have got so far from the spot at the time he was seen by this absent witness.

For the reasons stated, I think the judgment should be reversed, and the cause remanded back to the Criminal Court of Cook county, thus treating the change of venue as a nullity.

Mr. JUSTICE SCHOLFIELD: I concur in the views expressed in the foregoing opinion of Mr. JUSTICE MCALLISTER.