## THE STATE v. HANCOCK, Appellant.

### Division Two, March 7, 1899.

1. **Murder**: SELF-DEFENSE: CONTRARY TO PHYSICAL FACTS.  In this case it is held that defendant's testimony on self-defense is inconsistent with the physical facts surrounding the killing.

2. ——: VIEWING THE PLACE OF MURDER.  It is not error in this State for the trial court to refuse to send the jury to view the premises where the crime is alleged to have been committed.

3. ——: CONTINUANCE: FAILURE TO INCORPORATE IN BILL OF EXCEPTIONS.  Unless the application for a continuance is incorporated in the bill of exceptions, the question of its sufficiency is not open to review on appeal.

*Appeal from St. Louis City Circuit Court.*—HON. WILLIAM
ZACHRITZ, Judge.

AFFIRMED.

L. C. JONES and H. E. HOFERS for appellant.

EDWARD C. CROW, Attorney-General, for the State.

BURGESS, J.—In March, 1898, defendant was con-
victed in the circuit court of the city of St. Louis of murder
in the first degree,and his punishment fixed at death for hav-
ing on the twenty-fifth day of July, 1897, at said city shot
and killed with a pistol one George Horton.   The defenses
were insanity and self-defense.    From the judgment and
sentence defendant appeals.

At about 5:30 o'clock on Sunday evening, July 25, 1897,
the deceased was sitting in the office of George Bell, a ticket
broker at No. 1813A Market street in the city of St. Louis,
where he was employed and in charge of the office at the time,
when the defendant and another negro approached the front
door, and defendant inquired of C. R. Bell, another employee
in the office, for George Horton, and being informed that he
was in the office, defendant walked in, while the other negro
remained outside on the street, and approached Horton who
was then sitting upon a stool reading a newspaper, and
said to him, "Where do you live?"   In answer to which, Hor-
ton asked, "Who wants to know?"   Defendant replied, "You
tell me where you live and I'll tell you who wants to know."
Horton then said, "I won't tell you anything,  I don't want
you spying on me at all.  I want you to let my business
alone."   Some other words of a similar character occurred
between the parties when deceased ordered defendant out
of the house, and upon his refusal to go, struck him in the
mouth with his fist when they grappled and fell to the floor,
Horton being on top.   Defendant then said to Horton, "Let

me alone, and I'll get out and won't bother you no more." Horton then let him up, and defendant went out to where his companion was on the sidewalk, felt all over his pockets on the outside as if feeling for a pistol, and not finding one he pulled off his coat, threw it at the other negro, and started back into the office where Horton was, and being warned by Horton not to come in, if he did he would get hurt, defendant said, "well, I'll get you," and started off east up Market street in company with the other negro. In about thirty minutes he came running into the office and as he passed in through the door he pulled a pistol from his pocket, and without saying a word rushed up to Horton, who was sitting upon the same stool that he was sitting upon when defendant first approached him, with his back to defendant reading, and fired one shot, which powder-burned his face and produced an abrasion on the right side of the nose, whereupon Horton turned his back more to defendant, who then fired another shot, which entered below the ribs and above the hip on the right side of the backbone, perforating the small intestine, from the effects of which Horton died at said city on the twenty-ninth day of July next thereafter. When defendant fired the second shot Horton fell from the stool upon which he had been sitting and rolled under the counter, but defendant leaned over so that he could see him and continued to shoot at him until he emptied the pistol. Defendant stated to a police officer while under arrest that he "soaked his coat" to get the pistol with which to kill Horton, although he testified on the trial that he had it all the time. Immediately after the shooting defendant attempted to make his escape, but was apprehended by a police officer, taken to the station house and locked up. When arrested he still had the pistol in his hand which contained five empty cartridges. He admitted the shooting to the officer, at the same time applying to his victim a vile epithet. He had no coat on when arrested.

Defendant undertook to explain his first approach of Horton upon the ground that a certain woman had requested him to find out where he lived, and that it was with that object in view that he asked him that question; and his return for the purpose of again asking Horton where he lived, having forgotten the name of the place, and that when he entered the door Horton raised up and presented a pistol at him, when he, defendant, drew his pistol from his pocket, and fired upon him. There was some evidence, though very slight, tending to show that defendant was insane at the time of the homicide. He proved a good character for peace and quietude.

The court instructed for murder in the first and second degrees, self-defense and insanity.

In the motion and supplemental motion filed by defendant for a new trial, fifteen grounds are assigned, many of which are entirely without merit, and only such as seem to us to be meritorious will be passed upon, or further noticed. Of these the sixth, seventh, eighth and ninth will be considered together. In them it is asserted that the court misdirected the jury in regard to material matters; erred in giving of its own motion improper and illegal instructions; in refusing to give legal and proper instructions asked by defendant, and in not giving instructions covering all the law of the case.

The instructions which were given were evidently prepared with much care, covered every feature of the case in so far as we are able to discover from a careful reading of them, and free from objection. They are very fair indeed to the defendant upon the real issues in the case, but in addition thereto they presented to the jury the questions of insanity and self-defense, upon which it is very doubtful in our minds if there was any evidence upon which to predicate them.

The instruction upon self-defense was evidently given upon defendant's testimony to the effect that when

he returned to the ticket office and entered the door deceased drew up a revolver, and he, defendant, fired, but these statements were inconsistent with the physical fact disclosed by the record, that is, that the first shot fired by defendant powder-burned the face of deceased, and produced an abrasion on the right side of the nose, while the second shot entered to the right of the spinal column between the ribs and the hip which could not have been done had deceased been in the position of presenting the revolver at defendant at the time he fired these shots. As was said by SHERWOOD, J., in State v. Tabor, 95 Mo. loc. cit. 594: "And that the purpose of the defendant was not to defend himself from any anticipated attack from Dawson (Horton) is shown by the persistency with which he continued to fire upon his victim, after all attempts on his part to avoid his murderous aim had ceased." [See also State v. Gilmore, 95 Mo. 554; State v. Bryant, 102 Mo. 24.]

But if the instructions upon these theories of the case are erroneous, they are errors in favor of defendant, and of which he has no right to complain.

So that there was no error in giving, refusing, or failing to give instructions as asserted by defendant.

After the evidence was closed, but before the case was submitted to the jury defendant moved the court that the jury be taken to the room where the homicide is alleged to have been committed, to make a personal inspection of it, which was denied, and this also is one of the grounds assigned in the motion for new trial. In the absence of statutory enactment providing for such a course there is no authority in the trial of a criminal case for a view of the premises where the crime is alleged to have been committed (12 Am. and Eng. Ency. of Law, 368), and even when the view is authorized by statute it rests altogether in the sound discretion of the court. [Ib. 369.]

It is also asserted in the motion for a new trial that the court erred in overruling the application of defendant for a continuance, but the application is not incorporated in the bill of exceptions so that it is impossible without having it before us to pass upon its sufficiency. Had the defendant desired us to pass upon this question he should have seen that the application was copied into the bill of exceptions and thereby made part of the record, in the absence of which the question is not open to review.

The indictment is in form often approved by this court, and free from objection.

Finding no reversible error in the record, we affirm the judgment and direct the sentence of the court to be executed.

GANTT, P. J., and SHERWOOD, J., concur.