# STATE v. FRANK FRISBEE.

No. A-1188. Opinion Filed December 7, 1912.

(127 Pac. 1091.)

1.  TRIAL—Rights of Parties—Jeopardy—Right of State to Appeal.
    The state has the right to prosecute an appeal to this court upon
    any question of law reserved by the state during the trial of a
    criminal case. The fact that the defendant may have been
    acquitted and could not again be tried for the same offense will
    not in any way interfere with the right of the state to appeal
    and have the question so reserved settled.

2.  SAME—Rights—Waiver. (a) A defendant in a criminal case
    may waive any right not inalienable, given him by the statute or
    by the Constitution, where it can be relinquished without affect-
    ing the rights of others and without detriment to the community
    at large.

    (b) A defendant in a criminal case may waive any right
    not inalienable, given him by the statute or by the Constitution,
    either by express agreement or by conduct, or by such failure
    to insist upon it in seasonable time as will operate as an estoppel
    to his afterwards setting it up against the state.

    (c) A narrow, technical rule of construction should never
    be applied to any provision of the Constitution, but it should be
    construed in its reason and spirit.

    (d) Any person prosecuted in Oklahoma for a capital offense
    has the constitutional right to have furnished to him, at least
    two days before the trial begins, a list of the witnesses to be
    produced against him in chief by the state, and it would be error
    to force him into trial and allow such witnesses to testify against
    him whose names have not been so furnished, if he seasonably
    asserts his rights. But if he fails to object to going to trial on
    this ground, but announces ready for trial, he cannot afterwards
    avail himself of this objection, and the constitutional right given
    him by this provision will be waived.

3.  SAME—Jeopardy—Right to Plead Jeopardy. (a) Where a de-
    fendant has been put upon trial in a court of competent juris-
    diction upon an indictment or information sufficient to sustain
    a conviction, and a jury has been impaneled and sworn to try
    the case, jeopardy attaches, and if the jury is discharged with-
    out sufficient cause, and without the defendant's consent, such
    discharge of the jury, although improper, operates as an acquittal
    of the defendant.

    (b) If a defendant agrees to the discharge of a jury, al-
    though such discharge may be improper and unnecessary, or if
    on motion of the defendant a new trial is granted him, the de-
    fendant thereby waives his constitutional right, and he is es-

topped upon a second trial from claiming that he has already been in jeopardy upon such offense.

(Syllabus by the Court.)

*Appeal from District Court, Kiowa County;*
*Jas. R. Tolbert, Judge.*

Frank Frisbee was indicted for homicide, and, having been acquitted, the State appeals. Rulings reversed.

*J. E. Terral,* Co. Atty., *Benjamin F. Williams,* and *Cline & Zink,* for the State.

FURMAN, P. J. This is an appeal prosecuted by the state upon questions of law from a judgment rendered in the district court of Kiowa county, discharging a jury in a murder case pending in said court after the jury had been duly empaneled and sworn and jeopardy had attached, and in dismissing said cause from the docket of the court. To all of which the state at the time objected and excepted and reserved the questions of law involved to be made and presented for review on appeal to this court.

First. The first question to be considered is as to whether or not this appeal can be sustained. Section 6947, Comp. Laws 1909, is as follows:

"Appeals to the Supreme Court (Criminal Court of Appeals)' may be taken by the state in the following cases and no other: (1) Upon judgment for the defendant on quashing or setting aside an indictment or information. (2) Upon an order of the court arresting the judgment. (3) Upon a question reserved by by the state."

In the case of *State v. Brown, ante,* 126 Pac. 245, 250, in passing upon this very question, this court said:

"The right of the state to take an appeal in a criminal case has been twice sustained by this court. See *State v. Clifton,* 2 Okla. Cr. 189, 100 Pac. 1124, and *State v. Pollock,* 5 Okla. Cr. 26, 113 Pac. 207. * * * The fact that the defendant may have been acquitted and could not be tried again for the same offense would not interfere with the right of the state to appeal and have the question so reserved settled. Any other construction would render the third paragraph of section 6947 meaningless and nugatory." •

We thereforee hold that the state has the right to prosecute this appeal and that the case is properly before us for decision.

Second.   It appears from the record that one Frank Frisbee was prosecuted by information in the district court of Kiowa county charged with the offense of murder, and that the names of 33 witnesses were indorsed on the back of the information to be used by the state in chief in the trial of said cause.   It was further proven that on the 2d day of May, 1911, when the defendant was arraigned upon the information and entered his plea of not guilty, and the case was set for trial, the county attorney instructed the deputy clerk of the district court to prepare a list of the witnesses indorsed on the information, with their post office addresses, and serve them upon the defendant; that this list was prepared by the deputy district clerk as directed by the county attorney and furnished to the district clerk for service upon the defendant, but for some reason, which the district clerk did not or could not explain, the defendant was never served with this list, and the county attorney did not know of this until after the trial had begun, when counsel for defendant objected to the admission of any testimony because there had been no service of such list of witnesses.   It further appears from the record that this case was called for trial on the 16th day of May, 1911, and that the county attorney and the defendant and his attorneys appeared, and both sides announced ready for trial; that a jury was called, examined, and sworn to try the case; that the county attorney thereupon read the information to the jury and made his opening statement of the case to the jury, and that counsel for defendant also made his opening statement to the jury; that the rule was invoked and the witnesses were instructed accordingly; that thereupon R. H. Jones was called to testify in behalf of the state; that, after testifying as to some immaterial matters, the following occurred:

"Mr. Conner:   Comes now the defendant and objects to any evidence being heard from the witness now on the witness stand or from any other witnesses in this cause, for the reason that no list of witnesses has ever been served upon the defendant in this case as required by law under the Constitution of the state of Oklahoma."

Opinion of the Court.

The record shows that, as a matter of fact, the list of witnesses to be used by the state in chief, although prepared, had not been served upon the defendant as directed by the county attorney. In reply to the objection made by counsel for defendant to receiving any testimony in this case, the record discloses that the following occurred:

"Mr. Williams: Comes now the state of Oklahoma, by J. E. Terral, the county attorney of Kiowa county, and moves the court for a postponement of the trial of the said cause for a period of two full days for the purpose of serving a true and correct list of the witnesses to be used in chief upon the defendant in the above cause, as provided by law and the Constitution of the state of Oklahoma, and hereby tenders defendant an opportunity to avail himself of his constitutional and legal right for a continuance or postponement in said cause, and hereby tenders to the defendant at this time in open court the list of all witnesses to be used in said cause and their post office addresses. Mr. Conner: Defendant at this time objects to any postponement of the trial of this cause and insists that there can be no legal service of said list of witnesses upon the defendant at this time. The Court: Sustained. Mr. Williams: To which the state of Oklahoma excepts. Mr. Williams: The state of Oklahoma now requests the court to reassign this cause for trial. Mr. Conner: To which the defendant objects for the reason that both parties herein have announced ready for trial, and a jury has been impaneled, and the opening statements of counsel have been made, and one witness, as shown by the record, placed upon the witness stand. The Court: Sustained. Mr. Williams: State excepts. The Court: The objection to the introduction of evidence in the opinion of the court is well taken and will be sustained. Mr. Zink: To which ruling the state excepts. The Court: What is the further pleasure of the state? Mr. Williams: The state now moves the court and requests the court to reassign this cause for trial. Mr. Conner: To which the defendant objects for the reasons heretofore stated. The Court: I think, gentlemen, the case will have to proceed under the law. Mr. Williams: To which action and ruling of the court the state excepts. The state now announces to the court that the state cannot proceed to the trial of this case for the reasons heretofore stated, and again moves the court to reassign this case for trial. The Court: I think, gentlemen, that the law is against your motion, and the case will have to proceed. Mr. Williams: But the state announces that under the ruling of the court here-

tofore made, to wit, that no witnesses have been served in the above cause, the state cannot proceed further with the cause. Mr. Conner: Defendant at this time asks the court to instruct the jury to return a verdict of not guilty against the defendant. Mr. Williams: To which motion the state of Oklahoma objects. The Court: Gentlemen, the motion to instruct a verdict will be overruled. Mr. Conner: To which the defendant excepts. The Court: But, unless the state is ready to proceed further, the case will be dismissed, and the jury discharged, and the defendant released from the custody. Mr. Williams: As before stated,. the state cannot proceed to trial under the ruling of the court."

These proceedings present a number of interesting and important questions of law.

Section 28, art. 2, Williams' Const. of Okla., among other things provides that a defendant "shall have the right to be heard by himself and counsel; and in capital cases, at least two days before the case is called for trial, he shall be furnished with a list of the witnesses that will be called in chief to prove the allegations of the indictment or information, together with their post office addresses." This provision clearly gives a constitutional right to every defendant in a capital case. The question of a waiver of a constitutional right was passed' upon by this court in the case of *Blair v. State,* 4 Okla. Cr. 359, 111 Pac. 1003. Judge Richardson, speaking for the court said:

"After the state and the defendant had each announced ready for trial, and after the jury had been empaneled and sworn for the trial of the case, the defendant objected to proceeding any further and to the introduction of any evidence by the state on the ground that no copy of the information had been served upon him. This objection the court overruled, and the ruling is assigned as error. There was no error. Under the Constitution, the defendant is entitled to a copy of the accusation; but if he be at large so that he can go to the clerk's office, call for, and examine the original accusation and copy it for himself, if he desires, the state is under no obligation to make and serve a copy thereof upon him. *Stack v. State, infra* (4 Okla. Cr. 1, 109 Pac. 126). In such case the defendant may 'have a copy thereof' whenever he wants it. But, if the defendant be in custody and demands a copy of the accusation, the state must furnish it; but unless the defendant demands it before announcing ready for trial, which he did not do in this case, his right to a copy is waived. *Miller·*

*v. State,* 45 Ala. 24; *Driskill v. State,* 45 Ala. 21; *Dean v. State,* 43 Ga. 218; *Kelly v. People,* 132 Ill. 363, 24 N. E. 56; *Abrigo v. State,* 29 Tex. App. 143, 15 S. W. 408; *United States v. Shive,* 27 Fed. Cas. No. 16,278, Baldw. 510; *Howard v. State,* 37 Ark. 265; *State v. Winningham,* 10 Rich. (S. C.) 257; *People v. Warner,* 1 Wheeler Cr. (N. Y.) 140; *State v. Briggs,* 27 S. C. 80, 2 S. E. 854. If the defendant be in custody, has not a copy of the information, and desires one, his demand therefor should be made in open court before announcing ready for trial; and the fact of the demand and the court's ruling thereon should be made a matter of record, or shown by proper recitals in the case-made."

This question came before us again in the case of *Starr v. State,* 5 Okla. Cr. 440, 115 Pac. 356. Judge Doyle there said:

"Where a constitutional right in a criminal case is largely for the benefit of the accused or in the nature of a personal privilege, the law is well settled that an accused may waive such right. In the case of *State v. Adams,* 20 Kan. 311, Mr. Justice Brewer said: 'So far as the provision in the Bill of Rights is concerned, there are two questions: (1) Is it anything more than the grant of certain privileges, which an accused may waive? And, where the record shows an application for the benefit of such privilege, and no refusal of the court to grant them, and no objection to any action of the court thereon, is there any error? (2) Does the sending of a jury to view the place of the alleged crime, in the absence of the defendant, trespass on any of its guaranties? First. The language is permissive. "The accused shall be allowed"—that is, he may have if he wishes. If he does not wish, he may forego. If he does not wish, then he cannot complain that they were not forced upon him. Generally that which is mere personal privilege, which is not essential to jurisdiction, which is not absolutely and peremptorily required by statute or public policy, may be waived. In the case of *State v. Polson,* 29 Iowa, 133, the defendant consented that a copy of the testimony given in a former trial might be read as evidence instead of an oral examination of witnesses, and he was held concluded by such consent. His right to meet the witnesses face to face he had waived. So, while he is entitled to have counsel, he is not compelled to have them. He has a right to a subpœna for his witnesses, but he is not obliged to have one issued. And the record need not show that these privileges or rights were formerly tendered to him and formally declined, or that an express waiver was signed. It is enough if it does

not appear that they were denied when he applied for them. So there are many other matters which his failure to object to at the time prevents his afterward complaining of. If a leading question be asked, he must object at the time, or the error is waived. If an instrument, not properly authenticated, or a deposition, be offered in evidence and he remains silent, he cannot thereafter complain. If to avoid a continuance he consents that an affidavit be read as the testimony of an absent witness, he is estopped to say that he did not meet the witness face to face. Documentary evidence brought from a distant state is competent testimony, notwithstanding said section 10. *People v. Jones,* 24 Mich. 215. Contrast the language of said section 10 with that in section 207, above quoted. He "shall be allowed." "No person can be tried." The one expresses a privilege to the defendant; the other a condition of valid trial. Further, the origin of these provisions in the Bill of Rights indicates the extent to which they should be carried. It is well known that, at the old common law, the defendant was allowed no counsel. The judge was supposed to look after his rights. He was not allowed any witnesses in his own behalf. It was considered derogatory to the crown to contradict or impeach its witnesses. To obviate this injustice and secure to the accused the right of a full defense was the purpose of these provisions. That purpose is accomplished when he has the undeniable right to employ counsel and summon witnesses. We are of the opinion, therefore, that the fact that the jury were sent in a body under charge of an officer to view the place of the crime, unaccompanied by the defendant, and no application for permission to accompany them, and no error alleged on account thereof in the motion for a new trial, it is too late to insist in this court that the judgment must be reversed therefor. It is unnecessary, therefore, to consider the second branch of the question as to whether it would be error if challenged by the defendant at the time.'

"In the case of *State v. Mortensen,* 26 Utah, 312, 73 Pac. 562, 633, Bartch, J., delivering the opinion of the court, said: 'Upon examination, it will be noticed that the right of the accused to be confronted by the witnesses against him, secured by the constitutional provision above referred to, falls within the class personal to the accused. It is a personal right—a personal privilege—of which every defendant in a criminal proceeding may avail himself. It is limited to criminal prosecutions, and in no way affects the jurisdiction of the court to try the cause or to pass a valid judgment. Nor is the provision which secures to the accused the right in the nature of an inhibition upon a proceeding

not authorized by law. Nor is it in the nature of a limitation restraining the court from exercising its power in a place or manner prohibited by law, or without its jurisdictional limits. It is not very unlike the right which every one accused of, and being prosecuted for, a crime, has to plead guilty, and thereby waive the production of any evidence by the prosecution, and surely all agree that in such case, where a plea of guilty is entered, a court of competent jurisdiction has power to pass judgment and authorize the penalties of the law to be executed. Nor is it much unlike a case where the prosecution makes application for the continuance of a criminal cause on the ground of absent witnesses. Here the accused may admit that such witnesses, if present, would testify to the statements set out by the prosecution and consent to their use as evidence against him, and thereby secure a speedy trial. In such event, the accused consents to the use of the evidence without being confronted by the witnesses, and yet we know of no case where such action had in good faith, and not forbidden by express provision of law, was held to be in excess of the power of the court to permit. Such are simply instances, similar to the one at bar, where the accused waives his personal privilege to be confronted with the witnesses against him, and from them it seems apparent that in proper cases, where no harm can result to the accused, he may voluntarily waive his constitutional right of confrontation. The main reason for the confrontation of witnesses is to afford the accused an opportunity for cross-examination, and this is a privilege which he may waive. So when, at a trial, a prisoner sits by and permits inadmissible evidence to be received without objection, he cannot afterwards complain of the action of the court in receiving it.'

"In *Williams v. State,* 61 Wis. 281, 21 N. W. 56, it was said: 'It is well settled that the accused may waive his right to be confronted with the witness on the trial.'

"In *Perteet v. People,* 70 Ill. 171, it was said: 'A prisoner in a capital case is not to be presumed to waive any of his rights; but that he may, by express consent, admit them all away can be neither doubted nor denied. He may certainly plead guilty, and thus deprive himself of one of the most valuable rights secured to the citizen—that of a trial by jury. If he can expressly admit away the whole case, then it follows that he can admit away a part of it; but he will not be presumed to have done so. The consent must be expressly shown.'

"In the case of *Shular v. State,* 105 Ind. 289, 4 N. E. 870, 55 Am. Rep. 211, Elliott, J., delivering the opinion of the court, said: 'The court on the motion of the appellant sent the jury

to inspect the premises where the homicide was committed, and did not direct that the defendant should be present when the inspection was made, but no request was made by the defendant that he should be allowed to be present; nor was there ever a suggestion to the court that he desired to accompany the jury; nor did he, although he was present when the jury left the courtroom, ask that he be permitted to go with them; nor did he object in any manner to their making the inspection. But the record shows more than this; for it shows that the court directed the attention of the defendant and his counsel to the statute, and stated that it required the consent of the parties, and inquired if they consented to the order, to which inquiry, as the record recites, the defendant's counsel responded "by renewing their request, and defendant indicated his assent." Many authorities are cited by counsel in support of 'the general principle that the defendant must be present when evidence is given against him, and that this is the general rule we have no doubt; but the question here is whether the case is within the rule, not what the general rule is. Whether the case is within this general rule must depend upon the provisions of our statute and the conduct of the appellant. Our statute (Rev. St. 1881, sec. 1827) provides that: "Whenever, in the opinion of the court, and with the consent of all parties, it is proper for the jury to have a view of the place in which any material facts occurred, it may order them to be conducted in a body, under the charge of an officer, to the place, which shall be shown to them by some person appointed by the court for that purpose. While the jury are thus absent, no person, other than the officer and the persons appointed to show them the place, shall speak to them on any subject connected with the trial." This statute does not intend that the view of the premises where the crime was committed shall be deemed part of the evidence, but intends that the view may be had for the purpose of enabling the jury to understand and apply the evidence placed before them in the presence of the accused in open court. Deferring, for the present, the consideration of the authorities, and reasoning on principle, we shall have no difficulty in concluding that the statute does not intend that an inspection of a place where a crime was committed shall be taken as evidence. It cannot be seriously doubted that evidence can only be delivered to a jury in the criminal case in open court, and, unless there is a judge or judges present, there can be no court. The statute does not intend that the judge shall accompany the jury on a tour of inspection. This is so obvious that discussion could not make it more plain. The jury are not, the statute commands, to be spoken

to by any one save by the officer and the person appointed by the court, and they are forbidden to talk upon the subject of the trial. It is the duty of the jurors to view the premises, not to receive evidence, and nothing could be done by the defendant or by his counsel if they were present, so that their presence could not benefit him in any way, nor their absence prejudice him. The statute expressly provides who shall accompany the jury, and this express provision implies that all others shall be excluded from the right or privilege. It is quite clear from these considerations that the statute does not intend that the defendant or the judge shall accompany the jury; and it is equally clear that the view obtained by the jury is not to be deemed evidence.' See, also, *Wills v. State,* 73 Ala. 362; *State v. Wagner,* 78 Mo. 644, 47 Am. Rep. 131; *Hancock v. State,* 14 Tex. App. 392; *Bulliner v. People,* 95 Ill. 394; *State v. Arbuno,* 105 La. 119, 30 South, 163; *State v. Hancock,* 148 Mo. 488, 50 S. W. 112; *People v. Thorn,* 156 N. Y. 286, 50 N. E. 947, 42 L. R. A. 368; *Commonwealth v. Van Horn,* 188 Pa. 143, 41 Atl. 469; *Warner v. State,* 56 N. J. Law, 686, 29 Atl. 505, 44 Am. St. Rep. 415; *State v. Reed,* 3 Idaho (Hasb.) 754, 35 Pac. 706; *State v. Moran,* 15 Ore. 262, 14 Pac. 419; *Price v. United States,* 14 App. D. C. 391."

The principles announced in these cases meet our entire approval, and they are here reaffirmed. It is a well-settled principle of law, recognized by all appellate courts, that every one may waive a right intended for his own benefit if it can be relinquished without affecting the legal rights of others and without detriment to the community at large. See *Reid v. Fields,* 83 Va. 26, 1 S. E. 395. The right of waiver extends to and includes all descriptions of contractional, statutory, and constitutional rights, except such as are inalienable. An examination of the following cases will show that they fully support the preceding statement: *State v. Mitchell,* 119 N. C. 784, 25 S. E. 783, 1020; *Butler v. State,* 97 Ind. 378; *Williams v. State,* 61 Wis. 281, 21 N. W. 56; *Allen v. State,* 16 Tex. App. 237; *State v. Olds,* 106 Iowa, 110, 76 N. W. 644; *State v. Sackett,* 39 Minn. 69, 38 N. W. 773; *State v. Polson,* 29 Iowa, 133; *People v. Murray,* 52 Mich. 288, 17 N. W. 843; *Commonwealth v. Dailey et al.,* 12 Cush. (Mass.) 80; *State v. Fooks,* 65 Iowa, 196, 452, 21 N. W. 561, 773; *Connelly v. State,* 60 Ala. 89, 31 Am. Rep. 34.

The law on this subject is fully, clearly, and correctly stated in 40 Cyc. 265, as follows:

"1.   By Agreement.   Waiver may be made by an express agreement or promise declaring an intention not to claim the supposed benefit or advantage, and such agreement or declaration will not only waive those matters coming expressly within its terms, but will extend to other matters which by a natural and necessary implication would be affected.

"2.   By Conduct.   The more usual manner of waiving a right is by conduct or acts which indicate an intention to relinquish the right, or by such failure to insist upon it that the party is estopped to afterward set it up against his adversary.

"Authority and Capacity.   Waiver is usually a matter of personal privilege, and must be made by the person whose rights or remedies are to be affected, or by some one duly authorized to act for him in the matter.   Any person of full age and acting *sui juris* can waive matters affecting simply his property or alienable rights, and not involving considerations of public policy.   A waiver made by an infant, or by an incompetent or irresponsible person, will usually be considered void.

"Evidence of Waiver.   (1) In General.   Waiver is a matter of fact to be shown by the evidence.   It may be shown by express declarations, or by acts and declarations manifesting an intent and purpose not to claim the supposed advantage, or it may be shown by a course of acts and conduct, and in some cases will be implied therefrom.   It may also be shown by so neglecting and failing to act as to induce a belief that there is an intention or purpose to waive.   Proof of express words is not necessary, but the waiver may be shown by circumstances, or by a course of acts and conduct which amounts to an estoppel."

In support of this text, in addition to the authorities which we have cited, Cyc. cites hundreds of authorities to the same effect.   A case directly in point as to how the right which the defendant in this case relied upon may be waived by conduct, which we do not find in the citations made by Cyc., is the case of *Hickory v. United States,* 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170.   The opinion is by Chief Justice Fuller and on this question is as follows:

"Under section 1033 [U. S. Comp. St. 1901, p. 722] of the Revised Statutes, any person indicted of a capital offense has the right to have delivered to him, at least two days before the trial, a list of the witnesses to be produced, and it would be error to put

him on trial and allow witnesses to testify against him whose names have not been furnished, if he seasonably asserted his rights (*Logan v. United States,* 144 U. S. 263, 12 Sup. Ct. 617, 36 L. Ed. 429), but we think he did not do that here, and that the defect was waived."

So much for the authorities on this question. Let us now consider it for a moment from the standpoint of reason and justice.

That the provision of the Constitution requiring that in capital cases a defendant shall have the right to have at least two days' notice of the list of witnesses to be used in chief against him, together with their post office addresses, confers a valuable right upon a defendant in a capital case cannot be denied. It gives him an additional opportunity to make inquiry as to the character, bias, and antecedents of the witnesses against him, and to learn something of their testimony and thereby better enable him to prepare for trial. He is not required by law to announce ready for trial in a capital case, and it would be error to force him into trial if he makes seasonable objection, unless he has had this notice and this opportunity to make these investigations, and even after the two days have expired, if he can show that as the result of such notice, and as a result of such investigations, he has made discoveries as to matters not previously known to him, which will require him to make additional preparation for trial, upon such a showing under oath the court, in its discretion, may grant him a further postponement or continuance in order that such preparation may be made. It is the duty of the courts to protect a defendant in a capital case in the full enjoyment of this right. This is the substance and essence of the right conferred by the constitutional provision under discussion. This court has heretofore clearly laid down the rules by which it will be governed in construing constitutional provisions involving the rights of a defendant in a criminal case.

In the case of *Caples v. State,* 3 Okla. Cr. 78, 104 Pac. 496, 26 L. R. A. (N. S.) 1033, this court said:

"The first contention of counsel for the defendant is that 'it will be noted from this information that the word "the" is left out before the word "state" in the style of the case,' and that this

constitutes a fatal defect in the information. We cannot agree with this position for two reasons, viz.: First. The caption of the cause is placed on the information for convenience, and for the purpose of ready identification, and constitutes no part of the information itself. It is surplusage, pure and simple, and neither adds to nor takes from the charge. Second. If it were a necessary part of the information, we could not agree with counsel for the defendant. Write two sentences—one 'the state of Oklahoma,' and the other 'state of Oklahoma'—and submit them to the educated and uneducated alike, and the answer would be the same from both sources: That they each have substantially the same meaning. We are required by our statute to construe the laws of Oklahoma liberally, to promote the purposes for which they were enacted, and in furtherance of justice. We heartily indorse this wise provision of law, and propose to carry it out in spirit and in letter. This is in harmony with the divine law, which declares: 'For the letter killeth, but the spirit giveth life.' 2 Cor. iii, 6. Even without this statute, we would hesitate long before we would apply any narrow technical rule of construction to the Constitution. Constitutional provisions should always receive a broader and more liberal construction than statutes. The rule of construction of a statute is the intention of the Legislature. In construing constitutional provisions, the supreme question is, What did the people, whose votes adopted and placed the Constitution in force, intend? Therefore a common-sense rather than a technical construction should be placed upon the language used in a Constitution. Mr. Cooley, in his work on Constitutional Limitations (pages 89, 101), says: 'The object of construction, as applied to a written Constitution, is to give effect to the intent of the people in adopting it. When the inquiry is directed to ascertain the mischief designed to be remedied, or the purpose sought to be accomplished by a particular provision, it may be proper to examine the proceedings of the convention which framed the instrument. Where the proceedings clearly point out the purpose of the provision, the aid will be valuable and satisfactory; but, where the question is one of abstract meaning, it will be difficult to derive from this source much reliable assistance in interpretation. Every member of such a convention acts upon such motives and reasons as influence him personally, and the motions and debates do not necessarily indicate the purpose of a majority of a convention in adopting a particular clause. It is quite possible for a clause to appear so clear and unambiguous to the members of a convention as to require neither discussion nor illustration, and the few remarks made con-

cerning it in the convention might have a plain tendency to lead directly away from the meaning in the minds of the majority. It is equally possible for a part of the members to accept a clause in one sense and a part in another. And, even if we were certain we had attained to the meaning of the convention, it is by no means to be allowed a controlling force, especially if that meaning appears not to be the one which the words would most naturally and obviously convey. For as the Constitution does not derive its force from the convention which framed, but from the people who ratified it, the intent to be arrived at is that of the people, and it is not to be supposed that they have looked for any dark or abstruse meaning in the words employed, but rather that they have accepted them in the sense most obvious to the common understanding, and ratified the instrument in the belief that that was the sense designed to be conveyed. These proceedings, therefore, are less conclusive of the proper construction of the instrument than are legislative proceedings of the proper construction of a statute, since in the latter case it is the intent of the Legislature we seek, while in the former we are endeavoring to arrive at the intent of the people through the discussions and deliberations of their representatives. The history of the calling of the convention, the causes which led to it, and the discussions and issues before the people at the time of the election of the delegates, will sometimes be quite as instructive and satisfactory as anything to be gathered from the proceedings of the convention.' "

The public policy of this state as evinced by the Constitution of the state, the legislative enactments, and the repeated decisions of this court is to the effect that the spirit and reason of the law should control rather than that the cold, technical letter of the law should be enforced. We cannot bring outselves to believe that a provision of our Constitution which was intended solely for the purpose of assisting a defendant to prepare for trial in order that justice might be done should be so construed as to make it a means for the defeat of justice and a refuge for criminals and a protection for crime. A little reflection will show that the construction placed upon this provision of the Constitution by the trial judge would have directly the opposite effect from that intended. A defendant and his attorneys must of necessity know, when they announce ready for trial, as to whether or not a copy of the list of witnesses with their post office addresses, intended to be used by the state in chief, has been furnished to the

defendant or his counsel. If they were permitted, when no such list had been furnished them, not only to remain silent on this question, but announce ready for trial, and permit a jury to be empaneled and sworn and jeopardy to attach, and then object to the reception of any testimony because they had not been served with a copy of the list of such witnesses, it would enable them to take advantage of their own wrong, and it would work the rankest kind of injustice to the state. When a defendant voluntarily announces ready for trial, this operates as a waiver of all preliminary steps prescribed for preparation for trial. Evidently the learned trial judge, in the haste of the trial, did not give this question that due consideration which its importance demands, and which usually characterizes his rulings. This shows that sometimes the wisest, best, and most careful men make mistakes.

We therefore hold that, when the appellant announced ready for trial, he waived the service of the list of witnesses provided for in the Constitution and that the trial court erred in refusing to permit the state's witnesses to testify.

Third. When the court had sustained the defendant's objection to the reception of any testimony in this cause the defendant then moved the court to instruct the jury to return a verdict of not guilty, which motion the court refused to grant, and to which action of the court the defendant excepted. The court then of its own motion discharged the jury, dismissed the case, and ordered the defendant released from custody. Where a defendant has been put upon trial in a court of competent jurisdiction upon an indictment or information sufficient to sustain a conviction, and a jury has been impaneled and sworn to try the case, jeopardy attaches, and if the jury is discharged without sufficient cause, and without the defendant's consent, such discharge of the jury, although improper, operates as an acquittal of the defendant. Section 29, art. 2, of Williams' Const. of Okla., is as follows:

"No person shall be compelled to give evidence which will tend to incriminate him, except as in this Constitution provided; nor shall any person, after having been once acquitted by a jury, be again put in jeopardy of life or liberty for that of which he has been acquitted. Nor shall any person be twice put in jeopardy of life and liberty for the same offense."

It is seen that this provision expressly declares that no person who has been once acquitted by a jury shall be again put in jeopardy of life or liberty for that of which he has been acquitted, and the Constitution goes further and in express terms provides: "Nor shall any person be twice put in jeopardy of life and liberty for the same offense." All authorities agree that when a jury is sworn jeopardy attaches. Under the latter clause of our Constitution, if jeopardy has once attached, a defendant cannot be placed again in jeopardy for the same offense, unless the jury were necessarily discharged, or unless the defendant agreed to their discharge, or unless a new trial is granted him upon his request. In either of these events, the defendant cannot claim that he has been put a second time in jeopardy for such offense. For a full discussion and citation of authorities on this question, see *Lloyd v. State,* 6 Okla. Cr. 76, 116 Pac. 959. If the defendant had not demanded a verdict in this cause, and had not excepted to the action of the court, and had agreed to a discharge of the jury without a verdict, we would reverse the ruling of the lower court and remand the cause, with directions to the trial court to reinstate the indictment upon the docket of the court and have the defendant again arrested and placed upon trial; but, as the jury were discharged without the consent of the defendant and over his objection, he cannot be estopped from claiming he had once been in jeopardy for this offense. We must therefore content ourselves with reversing the ruling made by the trial court upon the questions of law reserved by the state.

The rulings of the trial court are reversed, and the cause is remanded, with directions that this order be entered upon the minutes of the district court of Kiowa county.

ARMSTRONG and DOYLE, JJ., concur.