### JOHN BULLINER *et al.*

*v.*

### THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Mt. Vernon June 14, 1880.*

1. WITNESS—*disregard of rule of separation.* Where a witness, after an order of separation, converses with other witnesses, after they have testified, and with counsel calling him, in violation of an order of the court, it is a matter of discretion with the court to allow him to testify. The disregard of such a rule is a good ground for the punishment of the parties for a contempt, but does not necessarily disqualify the witness from testifying.

2. There might probably be such an interference with witnesses, in disregard of an order of court, as would justify the setting aside of a verdict based on their testimony, where the opposite party has been free from fault, and the fact has come to his knowledge for the first time after the examination of all the witnesses has concluded; but where it is not shown that the party complaining had no knowledge of the fact at the time of the examination of the witnesses, and it does not appear that any harm has resulted from the disregard of the rule, it will afford no ground for a reversal of the judgment.

3. After an order of court for the separation of witnesses in a criminal case, the defendant's counsel stated that they wanted a certain witness present, who had been sworn, to assist them, stating that they would not call him as a

witness, whereupon the witness returned into court and heard all the other witnesses testify. He was offered as a witness to impeach the character of two of the principal witnesses for the prosecution, and rejected by the court: *Held*, that it was discretionary with the court to allow him to testify, and that there was no abuse of discretion under the circumstances.

4. SAME—*defendant in criminal case.* The jury are not bound to believe the evidence of a defendant in a criminal case and treat it the same as that of other witnesses, but may take into consideration the fact that he is defendant, and give his testimony such weight as, under all the circumstances, they think it is entitled to.

5. CRIMINAL LAW—*reading of paper by juror which comments on facts and the crime.* Where the counsel for a defendant handed a juror a newspaper to read, after he was sworn, but before the panel was filled, and afterwards, on the trial, his attention was called to the fact that another juror was reading a newspaper in which was an article purporting to contain a report of the trial, and commenting upon the case unfavorably to the defendant, and made no objection thereto, but stated privately to the court that it was best to say nothing about the matter, as it might give the article undue prominence and do the defendant more harm than good, it not appearing that the prosecution was responsible for the act, it was *held* that the irregularity was waived, and could not be urged by the defendant as error to reverse a judgment of conviction.

6. SAME—*waiver of irregularities by not objecting in proper time.* A prisoner on trial has no right to stand by and suffer irregular proceedings to take place, and then seek a reversal for the same. Like any other defendant, if he neglects in proper time to insist upon his rights, he waives them.

7. SAME—*witnesses not indorsed on indictment.* It is a matter of discretion with the court to permit a witness to be examined, by the prosecution, whose name is not indorsed on the indictment, nor given to the defendant before the commencement of the trial, and error can not be assigned on the exercise of such discretion against the defendant.

8. A witness whose name was not indorsed on the indictment, and in respect of whom no notice had been given, and who remained in the court room and heard the testimony of the witnesses, there being an order for the separation of the witnesses, may be called to testify to matters in rebuttal to, or to contradict the testimony of the defendant.

9. SAME—*evidence not objected to can not be assigned for error.* On the trial of one for murder, the record showed that on his cross-examination he narrated how, in self-defence, he had killed a man in Arkansas while he was in the army, but the record failed to show that this was in response to any question by the counsel for the people, or that any objection was urged to the court against his answering any question in that regard: *Held*, that the defendant could not urge this as error.

10. NEW TRIAL—*giving time to prepare and present motion.* If a defendant convicted of crime desires an extension of time in which to prepare and present a motion for a new trial, he should show some reasonable ground therefor. Facts should be given showing the necessity for the delay—that there is a substantial reason in the interest of justice requiring it.

11. SAME—*newly discovered evidence.* Where an affidavit of newly discovered evidence discloses nothing but cumulative evidence, and which, if introduced on the trial, could not have changed the result, a motion for a new trial based on it is properly denied.

12. PRACTICE—*commenting on letter not in evidence in argument.* Where a defendant, on his trial for murder, identified three letters by a witness, and then handed them to the judge to be marked and preserved until they should be used, but afterwards offered in evidence only two of them, it was held improper and irregular in the State's attorney to make any allusion to the third letter in his closing remarks, wondering what it contained, and that it should not have been allowed, but that if no objection was made to the remarks at the time, and no exception taken, it was not sufficient to authorize a reversal.

13. SAME—*argument.* In general, arguments of counsel to the jury should be confined to the evidence and the principles of law claimed to be applicable thereto; but in discussing these, the motives to duty, the causes that may be supposed to control human action under different circumstances, and the probabilities or reasonableness of this or that theory as tested by human experience, necessarily may be considered. The court should see that the line of argument is kept within reasonable bounds, and not suffer one to be convicted or prejudiced on account of real or imaginary crimes for which he is not being tried. But, except for a palpable abuse of discretion in this respect manifestly tending to an improper conviction, there should be no reversal.

14. INSTRUCTIONS—*repeating.* There is no error in refusing an instruction when substantially the same principle enunciated in it is embraced in others which are given.

WRIT OF ERROR to the Circuit Court of Jackson county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

Mr. F. E. ALBRIGHT, and Mr. M. C. WHITE, for the plaintiffs in error:

The defendants went into trial with the hope that Crain, Musick and all other witnesses would be kept apart from each other, but their rights under the law were violated with impunity, and the order of the court separating the witnesses and refusing them communication with each other, was wholly diregarded.

It was error to permit newspapers containing a garbled and untrue statement of the evidence, and comments thereon unfavorable to the defendants, to be read by the jury over the protest of the defendants. The facts and effects thereof are set forth in the affidavits of the defendants in support of the motion for a new trial, which, not being denied, are *prima facie* true.

The court erred in permitting Abe Stanley and James Conners, whose names are not indorsed on the indictment, and whose names were not furnished defendants, to testify, the last named witness having remained in the court room and heard all the testimony of the other witnesses. Rev. Stat. 1874, p. 409, sec. 421.

Defendant Baker, after testifying for the defence, was, on cross-examination, compelled to narrate the facts of having previously killed a man while in the army in Arkansas.

It is a familiar principle of law, strictly enforced by the courts, that a defendant upon trial charged with a felony never tacitly waives any of his rights. Baker was a witness in his own behalf, and the evidence of a previous killing was drawn out by the prosecution for the sole purpose of prejudicing the jury against him.

Law, justice and the rules of evidence are all outraged by inducing a jury, through a prejudice raised by such improper evidence, to convict a man for a crime of which he is innocent, because he ought to be punished for another and distinct crime of which he may be guilty. 1 Whart. Am. Crim. Law, sec. 647; Bish. Crim. Proc. sec. 1064; *Brock* v. *State*, 26 Ala. 104; *The People* v. *Corbin*, 56 N. Y. 363; *Bonsal* v. *State*, 35 Ind. 460; *The People* v. *Barnes*, 48 Cal. 551; *Barton* v. *State*, 18 Ohio, 221.

The evidence should be confined to the charge set forth in the indictment. *Kribs* v. *The People*, 82 Ill. 425.

The court erred in refusing to allow further time to prepare affidavits and make preparation to present motion for a

new trial. *Meredith* v. *The People,* 84 Ill. 480; *White* v. *The People,* 94 Ill. 604.

The court erred in permitting counsel for the people, in the closing speech, to improperly comment on a letter and other matters not in evidence.

The testimony of Crain and Norris was very important, but was refused by the court for the reason that they had heard other witnesses testify,—a reason not considered good, when asked by the defendants to apply it to Conners, a witness for the people. Moore's Crim. Law, 695; *Flood* v. *Prettyman,* 24 Ill. 597.

Mr. JAMES K. EDSALL, Attorney General, for the People:

It was within the discretion of the court to allow witnesses to be examined whose names were not indorsed on the indictment. *Gardner* v. *The People,* 3 Scam. 89; *Gates* v. *The People,* 14 Ill. 436.

The statute which gives the defendants in criminal cases the right to testify in their own behalf, provides that the fact of conviction of another crime may be shown as affecting his credibility. Rev. Stat. 1874, 410, sec. 426. The facts elicited upon the examination of Baker were competent for this purpose. 1 Whart. Crim. Law, (7th ed.) 782 b; *Commonwealth* v. *Bonner,* 97 Mass. 587.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

John Bulliner, Allen Baker and Marshall Crain were jointly indicted by the grand jury of Jackson county for the murder of George W. Sissney. Bulliner and Baker were placed upon trial under the indictment at the September term, 1875, of the Jackson county circuit court, the cause being continued as to Crain. The jury returned a verdict of guilty, as charged in the indictment, against both, and fixed the punishment of each at confinement in the penitentiary for the term of twenty-five years. Motions for new trial and in

arrest of judgment were made by counsel for the defendants, which were overruled by the court, and the court thereupon gave judgment upon the verdict of the jury.   The defendants bring the record here, and assign numerous errors as grounds for the reversal of the judgment.   These will be briefly noticed in their order.

The first error assigned is: "The court permitted Samuel Musick and Marshall Crain, the two accomplice witnesses, to testify, over objections of defendants, said witnesses having each been conversed with (in violation of rule separating witnesses) by B. F. Lowe, Elkanah Brush, witnesses, and W. A. Lemma, one of the attorneys for the people."

It is not shown that any harm to the defendants resulted from this violation of the rule of court.   The only respect in which it is suggested that it might have resulted in harm is, in the repeating by these parties of the testimony given by Musick to Crain before Crain testified, thereby enabling Crain to follow Musick in his testimony.   It is quite evident that no such result actually followed.   The testimony of Crain bears strong internal evidence that it was not patterned on that of Musick.

The disregard of this rule might have afforded good grounds for the punishment of the parties for contempt, but it was within the discretion of the court, and hence not error to permit the witnesses to testify after they had been thus conversed with.   1 Greenleaf's Evidence, sec. 432; 3 Wharton's Crim. Law (7 ed.), sec. 3009 a; see also, note c to same section at p. 66 of that volume.

If witnesses, after an order of separation, upon being spoken to by third parties in violation of an order of court, would become thereby disqualified to testify, a wide door would be opened to unscrupulous friends of those charged with crime to disqualify all material prosecuting witnesses.

There might, probably, be such an interference with witnesses, in disregard of an order of court, as would justify the court in setting aside a verdict based upon their evidence,

the defendant being free of fault and the facts being brought to his attention for the first time after the examination of all the witnesses had concluded. But the present is not such a case. It does not appear but that the defendants knew, when Crain was examined, that he had been conversed with by the parties named, and if they did, he should then have been interrogated with reference thereto and its probable effect upon his evidence left to the jury. But, as before observed, it is not shown that any harm to the defendants resulted from this disregard of the rule of court.

The second error assigned is: "The court permitted the jury to read newspapers containing garbled and untrue reports of the evidence and comments unfavorable to the innocence of defendants, over the objection and protest of the defendants." It is not shown that, in point of fact, any juror read any such garbled and untrue reports of the evidence and comments unfavorable to the innocence of the defendants. It is shown simply that a juror was seen to be reading a newspaper in which was published what purported to be a report of the trial, and also comments upon the case. Whether he read that report or those comments is not shown.

. The facts relating to this matter, as disclosed by the record, are these: "While the jury was being impanneled to try the cause, the court noticed that one of the counsel for the defendants handed one of the jurymen, who had been accepted and sworn to try the cause, a newspaper. There was no objection to this by the counsel for the people, and nothing was said by either party against the jurymen reading the newspapers, from which the court was induced to believe that there was no objection. A day or two afterwards one of the attorneys for the defendants spoke to the court, stating that there was an article in the *Globe-Democrat* of that day that might be viewed by the jury as prejudicial to the defendants, and while he did not want to make a motion on the subject or have the counsel for the people to do so, he would like for the court to have the paper kept from the jury. The

court looked around immediately and discovered that one of the jurymen had the paper and was reading it, and called the counsel's attention to the fact that his suggestion came too late, as one of the jurymen already had the paper and had probably read the article; and, on further conversation, it was thought best by the court, and was so stated to counsel at the time, that as the paper was already in the hands of one of the jurymen it would give the article too much prominence and do the defendants more harm than good to speak about it, and nothing further was said or done about it.   *   *   * There was no motion made by the counsel for defendants at the time, and no exception taken."

It thus appears that the counsel for the defendants are responsible, in the first instance, for the introduction of newspapers to the jury, and that the defendants, knowing that the newspaper, of the reading of which they now complain, was being read by a juror, made no motion to have the reading stopped or prevented, and took no exception to the course pursued by the court.

It was said in *McKinney* v. *The People,* 2 Gilm. 556, "A prisoner on trial, under our laws, has no right to stand by and suffer irregular proceedings to take place and then ask to have the proceedings reversed on error on account of such irregularities.   The law, by furnishing him with counsel to defend him, has placed him on the same platform with all other defendants, and if he neglects in proper time to insist on his rights, he waives them."

This doctrine was applied in *Perteet* v. *The People,* 70 Ill. 171,—a capital case,—and it was there held that the defendant, by going to trial in the circuit court in a cause in which a writ of error had been previously sued out in this court, waived the filing of a remanding order from this court.   See also, *Chase* v. *The People,* 40 Ill. 356.

It is proper to add that the circuit court subsequently, after the evidence was all in, and before argument was commenced, made, of its own motion, a peremptory order that all news-

papers be excluded from the jury, and there is no complaint that this order was not rigidly enforced.

It is also to be further added that there is no proof that those representing the prosecution were in any degree responsible for the jurors having the newspaper complained of.

Under all the circumstances, we must hold the defendants waived, by the course they pursued, all objection to the reading of the newspaper by the juryman.

The third error assigned is: "The court erred in permitting Abe Stanley (whose name was never placed on the indictment nor given to defendants before commencement of trial) to testify against defendants." This has been held to be a matter within the sound discretion of the court, for the exercise of which error can not be assigned. *Gardner* v. *The People,* 3 Scam. 89; *Gates* v. *The People,* 14 Ill. 436; *Smith* v. *The People,* 74 id. 144; *Logg et al.* v. *The People,* 92 id. 598; *Perteet* v. *The People, supra.*

The fourth error assigned is: "The court erred in permitting improper evidence to go to the jury, against the defendants." This is based on the admission of the evidence of James Conners, whose name was not indorsed on the indictment, and who, it is alleged, remained in the court and heard all the testimony of other witnesses. The objection in regard to the failure to indorse his name on the indictment, or furnish it to the counsel for the defendants, is answered by the authorities referred to under the third error. The objection in regard to his being in the court room is answered by the authorities referred to under the first error. His evidence, moreover, was rebutting, and of that character that it could not possibly have been affected by hearing the evidence of other witnesses for the prosecution, being confined to a contradiction of the evidence of the defendant Baker in regard to selling Baker ammunition at a particular time.

The fifth error assigned is: "The court erred in compelling the defendant Baker to answer improper questions." The "improper questions" are said by counsel, in argument, to

have required Baker, on cross-examination, to narrate the facts of having previously killed a man in Arkansas, while he was in the army. The bill of exceptions fails to sustain the statement upon which this error is predicated. It does show that Baker, on cross-examination, narrated how, in self-defence, he killed a man in Arkansas, while he was in the army; but it does not appear that this was in response to any question asked by counsel for the people, or that any objection was urged to the court against his answering any question in that regard, or that the court made any ruling in regard to such evidence, upon which there was or could have been exception taken.

The sixth error assigned is: "In refusing sufficient time to defendants in which to obtain affidavits of newly discovered witnesses in support of motion for new trial, and in which to make preparation to present motion for new trial." It is not shown that there was any necessity for further time than that which was allowed by the court. The defendants are presumed to have been prepared for trial when they were tried. They are not shown to have been taken by surprise by the introduction of material evidence on the part of the State. The names of the witnesses whose evidence seriously affected them were indorsed on the indictment, and known to them before the trial commenced. Delay is not required to be given to counsel simply to scour the country to see if, by possibility, they might not find something that would reflect upon the conduct of the court or jury, or those having the trial in charge, or tend to disprove some matter given in evidence upon the trial. Facts should be given showing the necessity for delay; that there is a substantial reason, in the interest of justice, requiring it. In many cases an hour's delay would be, manifestly, sufficient to enable counsel to prepare for making and arguing the motion for a new trial, while, in other cases, it is equally manifest that, by reason of peculiar circumstances, it might require days.

The facts here, as appears by the record, are these: "The Williamson county circuit court had been adjourned over from Monday, the 11th day of October, A. D. 1875, to Thursday, October 14, A. D. 1875, at 10 o'clock A. M., in order to finish this trial, which was progressing on the 11th. The verdict was returned early Wednesday morning, the 13th day of October, 1875, and a motion was then made for a new trial by the defendants, and the court informed them that the motion would be taken up at 9 o'clock that morning. At 9 o'clock the defendants, by their counsel, announced that they were not ready to take up the motion, and the time was extended to 1 o'clock in the afternoon of that day. At 1 o'clock the defendants were not yet ready, and they were given until 2 o'clock of the same afternoon, at which time the motion for a new trial was taken up. The official duties of the judge were such—Williamson county being in the same circuit— that further time could not be given without postponing the motion for a new trial to a subsequent term, or making a further adjournment of the Williamson circuit court, which the court refused to do."

It does not appear that by a continuance of the motion to a subsequent day there was reason to believe that the defendants would have been in possession of facts of which they were justly entitled to the benefit, which they did not then have, or that their counsel were not then able to argue their motion as intelligibly and satisfactorily as the ends of justice required. There was no error in the ruling in this regard.

The seventh error assigned is: "The court erred in permitting counsel for the people, in the closing argument, to comment on matters not in evidence, to the prejudice of defendants."

This, as we learn from the argument of the counsel for the defendants, is based on the comments of counsel in the closing address to the jury, in regard to a letter and other matters not in evidence, such as the prevalence of crime in the country, etc.

The facts in regard to the letter, as shown by the record, are: "When the letters that were offered in evidence—two in number—were presented to Marshall Crain for identification, a third letter was also presented by defendants' counsel and identified by Crain. These three letters were given to the court by counsel for the defendants, to be marked and preserved until they should be used. When the letters were offered in evidence, only two of them were offered and read by defendants in evidence. The counsel for the people, in summing up, referred to this fact and commented on it before the jury, and wondered what the third letter contained, but did not attempt to state what it did contain."

With reference to the comments in regard to the prevalence of crime, the record shows that "the counsel both for the defendants and the people referred to the prevalence of crime and commented on it, but, in the opinion of the court, not in a manner prejudicial to the defendants."

The allusion to the letter not in evidence was irregular and should not have been allowed, but it does not appear that it was challenged at the time or any exception taken in that regard, and we can not say that it was error authorizing a reversal of the judgment.

With respect to the illustrations with which counsel shall be allowed to embellish their arguments, it is impossible to lay down any fixed rule. In general, arguments should be confined to the evidence given to the jury, and the principles of law claimed to be applicable thereto. But, in discussing these, the motives to duty, the causes that may be supposed to control human action under different circumstances, and the probabilities or reasonableness of this or that theory, as tested by human experience, necessarily may be considered. The trial judge should always see that the line of argument is kept within reasonable bounds, and not allow the defendant to be convicted or prejudiced on account of real or imaginary crimes for which he is not upon trial. And, unless for a

palpable abuse of discretion in this regard, manifestly tending to an improper conviction, there should be no reversal.

We see no abuse of discretion here in this respect.

The eighth error assigned is: "The court erred in refusing proper evidence offered by defendants to go to the jury."

This relates to the testimony offered, as counsel for the defendants say, by Samuel R. Crain and Norris.

We have been unable to find anything in the record showing what evidence was proposed to be elicited from Norris which the court refused to allow. Certainly there is nothing in the abstract on this subject.

Samuel R. Crain, the record shows, "had been sworn and sent out, and defendants' counsel announced that they wanted him present to assist them, stating that they would not want to call him as a witness at all. Whereupon he remained in the court room and heard all the witnesses testify." He was offered as a witness to impeach the characters of Marshall Crain and Samuel Musick, the two principal witnesses for the prosecution, and rejected by the court. It was discretionary with the court to allow the witness to testify under these circumstances, and we can not say there was an abuse of discretion in rejecting his evidence.

The ninth and tenth errors assigned relate to the giving and refusing and modifying of instructions, to which the defendants excepted.

The first objection urged, under this head, is that the court refused to give the defendants' fourth instruction, as asked. It is sufficient to say, without setting out this instruction at large, that substantially the same principle that it was intended to enunciate is embraced in other instructions which were given.

Objection is also urged, that defendants asked the court to instruct the jury "that, under the law, the evidence of the defendants is just as proper for your consideration in determining their guilt or innocence as the evidence of other witnesses." But the court modified the same by striking out

the words, "as the evidence of other witnesses," and adding, "and should receive such weight as you think it entitled to." This modification is entirely unobjectionable. The jury are not bound to believe the evidence of defendants—and may take the fact that they are defendants into consideration, and give their evidence such weight as, under all the circumstances, they think it entitled to.

The objections urged to the people's fourteenth and sixteenth instructions are hypercritical, and such as could not have affected the jury.

The eleventh error assigned is, that the "verdict of the jury is manifestly against the evidence."

About nine or ten o'clock on the evening of July 28, 1875, George W. Sissney, while sitting and conversing with a friend, in his own house, in Carbondale, was shot and instantly killed. The shot was fired through a closed window from without the house. It was quite dark and rainy at the time, and the assassin escaped without being seen. The deceased had been living in Williamson county until within about six months of his assassination, when he removed to Carbondale. While living in Williamson, and some three months before his removal to Carbondale, he was shot in the arm. He had been on bad terms with some members of the defendant Bulliner's family; and Bulliner's father and one brother were assassinated before Sissney left Williamson county. Bulliner assumed that Sissney was in some way implicated in these assassinations, and this is supposed to have induced Bulliner to desire the assassination of Sissney.

The evidence clearly shows that Sissney was assassinated either by the defendant Crain or the defendant Baker, which, we do not consider material. It also shows clearly, that Crain, Musick and Baker were all in the conspiracy to assassinate Sissney. If any reliance can be placed on the witnesses, and the jury were the most competent judges in this regard, the defendant Bulliner procured this assassination to be made,—hired and paid for it. Whether Baker actually fired

the shot or not, his participation in the assassination, as a co-conspirator with the one who did fire it—aiding, encouraging, etc.—is such as to make him a principal.

We can not say the verdict is not warranted by the evidence.

The affidavits in regard to newly discovered evidence, disclose nothing but cumulative evidence to that given to the jury on the trial. We do not conceive that, even if this evidence had been introduced, it could have changed the result.

Upon the whole, we see no cause to disturb the judgment below.

The thirteenth and last error assigned, to the effect that the court erred in overruling the motion in arrest of judgment, was abandoned on argument, and has nothing to rest upon.

The judgment is affirmed.

*Judgment affirmed.*