# William Palmer v. The People of the State of Illinois.

## Gen. No. 4,257.

1. WITNESS—*right of court to disqualify, from testifying.* Where witnesses have, by order of court, been excluded from the court room while other witnesses in the cause are testifying, and one of them disobeys such order and listens to the testimony of other witnesses, the

court has a discretion to refuse to permit such witness to testify; but such discretion is a reasonable and not an arbitrary one and its abuse is subject to review.

2. WITNESS—*when court abuses discretion in disqualifying a.* It is not a reasonable exercise of the discretion referred to in the preceding paragraph of this syllabus for the trial judge to deprive a party of a witness who has heard testimony in violation of such an excluding order, unless such party, or his attorney, is in some way responsible for such violation or has connived at it or has knowingly permitted it without objection; but even in the latter case a sound judicial discretion should in all cases of doubt lean toward the admission of the testimony of such a witness. But where objection is made to a witness upon the ground of the violation of such an order, such objection should be supported by proof, and the party urging the same loses the right so to object if he, knowing that such an order was being violated, permits the same to continue without calling the attention of the court thereto.

3. WITNESS—*when materiality of the testimony of a, who has improperly been excluded, need not be shown.* Where the court has improperly disqualified a witness, it is not necessary in order to sustain an assignment of error based upon such disqualification, to show the materiality of the evidence which such witness would have given, where such materiality appears from the record as a whole.

Error to the Circuit Court of McHenry County; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the October term, 1903. Reversed and remanded. Opinion filed March 14, 1904.

E. V. ORVIS and J. K. ORVIS, for plaintiff in error.

L. D. LOWELL, State's Attorney, for defendant in error; JOHN B. LYON, of counsel.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

William Palmer was indicted and convicted in the court below for the larceny of two rolls of woven wire, the property of William Watts, alleged to be worth $18 and found to be worth $14. Palmer was fined and sentenced to imprisonment in jail, and has sued out this writ of error to reverse the judgment.

Watts owned a farm occupied by a tenant, and in February, 1903, distributed several rolls of wire through a timber lot on his farm where he intended to build an inside fence. He left one roll just inside the highway fence,

another forty rods back, and the others still further away. On April 19, while distributing fence posts in that line, he missed two rolls of wire he had left nearest the highway. He and his tenant searched and could not find them. They testified they then remembered those two rolls were not there when they distributed a previous load of posts on April 2. Watts found that Palmer, a tenant on a farm two miles distant, had a new wire fence, made of like wire and of nearly the same quality as the missing wire. Watts obtained information which aroused his suspicions, and he instituted this prosecution, charging that Palmer's fence was built of his wire. On May 26, and after Watts began this prosecution, his tenant found two rolls of wire in Watts' timber lot, corresponding to the missing rolls, one a few rods from where the roll had been left near the highway, and the other a few rods from where the other missing roll had been left. This tended to the conclusion the wire had never been stolen. But other proof tended to show that the bundle found furthest of the two from the highway had been made on May 21, which indicated that these rolls had recently been placed there by some one who either intended to make restitution or else to create false proof that there had been no larceny. No witness testified that Palmer stole Watts' wire, or that the wire in Palmer's fence was that which Watts had lost. Palmer denied stealing it, and claimed that the wire of which his fence was built was bought by his wife on April 1, in Richmond, a village some seven or eight miles distant, where he had been but once before this accusation. In the view we take of the case it is unnecessary to set out the main details of the proof, which consisted chiefly of apparently incriminating circumstances shown by the state, and explanations and denials by the defense. The proof introduced by the state, if true, placed defendant under a grave suspicion of guilt. If the proof introduced by defendant was true, he was not guilty.

Witnesses who were apparently disinterested testified for defendant that on April 4 they saw at Palmer's place

the wire of which his fence was afterwards built, and that on April 12 his fence was finished. This was not disputed. Earl Campbell then testified for defendant that on April 15 he was driving with Sam Orvis along the highway by Watts' timber lot, and that Sam Orvis called his attention to a roll of fence wire lying inside of Watts' fence near the highway, and he saw it there; and that he knew it was April 15 because that was the last day he worked for Sam Orvis, and the next day he went to work for another man, and he set down the date in a book at home by his mother's direction. His next employer then testified Campbell went to work for him on April 16. It is evident this testi-mony by Campbell was important. If it was true, Palmer could not be guilty. If the wire was still in Watts' lot on April 15, then it did not enter into Palmer's fence which was completed before April 12, with wire which was at his place on April 4. Immediately after Campbell and his second employer had testified, defendant called Sam Orvis. The state's attorney said, "We object to this wit-ness, your honor, for the reason that on yesterday when you ordered the witnesses to go into the other room this witness went outside the door and listened to the testi-mony of the witnesses." The court sustained the objection and defendant excepted. The motion for a new trial made the point that the court erred in refusing to allow that wit-ness to testify for defendant. The motion for a new trial was overruled and defendant excepted to the ruling, and has assigned for error the denial of the motion for a new trial, and also specifically the action of the court in refus-ing to permit said witness to testify for defendant. The prosecution claims that if a witness who has been excluded from the court room during the trial in order to prevent his hearing the testimony of the other witnesses, comes into the court room or where he can hear the testimony, it is entirely discretionary with the trial court whether he shall afterwards be permitted to testify. We therefore proceed to the consideration of this important question.

In Bulliner v. The People, 95 Ill. 394, a murder case, two

witnesses were permitted to testify for the people, though there had been as to them a violation of the rule separating the witnesses, and the testimony of a witness had been repeated to one of the excluded witnesses. The court said that it was not shown any harm had resulted, and while the disregard of the rule might have furnished good grounds for the punishment of the parties for contempt, still it was within the discretion of the court, and hence not error, to permit the witnesses to testify after they had been thus conversed with. The court then said: "If witnesses, after an order of separation, upon being spoken to in violation of an order of court, would become thereby disqualified to testify, a wide door would be opened to unscrupulous friends of those charged with crime to disqualify all material prosecuting witnesses. There might probably be such an interference with witnesses, in disregard of an order of court, as would justify the court in setting aside a verdict based upon their evidence, the defendant being free of fault and the facts being brought to his attention for the first time after the examination of all the witnesses had concluded. But the present is not such a case. It does not appear but that the defendants knew, when Crain was examined, that he had been conversed with by the parties named, and if they did he should then have been interrogated with reference thereto, and its probable effect upon his evidence left to the jury." In Wilson v. Genseal, 113 Ill. 403, defendant recalled a witness who had already been examined, and asked him a single question, whether a certain witness who had testified for plaintiff had made certain statements in his hearing. This question was not permitted to be answered, because the witness had been present part of the time at the examination of plaintiff's witnesses, in violation of an order for the exclusion of witnesses. The court without any discussion of the question said it could not see there was any abuse of the court's discretion. In Kota v. People, 136 Ill. 655, defendant objected to permitting a witness to testify for the people because he was in the court room and had heard the testimony

of other witnesses. The objection was overruled. The Supreme Court said there was nothing in the record to show that the witness was in the court room contrary to the order of the court, but that if he was, that fact would not disqualify him as a witness, and cited 3 Wharton's Crim. Law, sec. 3009 a. In the passage thus cited with approval, Wharton says in the text: "It is within the power of the court to order that the witnesses should be excluded from the court room with the exception of a particular witness under examination, and witnesses by whom the demand is disobeyed may be, as to credibility, open to grave criticism, and punished for contempt. At the same time the action of the court trying the case will not be revised in this respect in error, unless it appears that manifest injustice has been done." In a note under said section, on p. 66 of the 7th edition, the following language is quoted from the 17th edition of Archbold's Criminal Pleading (the citations being omitted by us): "It has been said that if, after such an order, a witness may be present during the examination of the other witnesses, he cannot be examined; but the conduct of the witness seems to be no ground for depriving the Crown, or the defendant, of a witness, and the practice is to allow him to be examined, subject to observation as to his conduct in disobeying the order; although this was formerly held to be a matter for the discretion of the judge. It seems now, however, to be the better opinion that the judge has no right to reject the testimony of a witness who has remained in court after an order to withdraw." In Bow v. People, 160 Ill. 438, the trial court had permitted a witness to testify for the people after being in the court room contrary to an order of the court excluding witnesses. The Supreme Court said: "The court might properly punish a witness for contempt for violation of the order, but it was not an abuse of discretion on the part of the court to permit him to be examined as a witness."

These are all the decisions upon this subject by the Supreme Court of this state which have come to our attention. Three times the Supreme Court has approved the act of the

trial court in permitting the witness to testify in such a case, as a proper exercise of discretion, and once it has approved a refusal to permit a single question to be answered by such a witness who had already been fully examined. In the only case in which the court discussed the subject at length, its reasoning was against depriving a party of the testimony on that account, and in the Kota case it says such a witness is not disqualified, and cites an authority which seems to hold that the better opinion is the trial judge has no right to reject the testimony of a witness merely because he has disobeyed such an order. We conclude the Supreme Court does not mean to hold that the trial court has an absolute discretion to reject a witness merely because he has violated such a rule, but that what is referred to is the exercise of a reasonable discretion, in view of all the facts and circumstances—a discretion which can be abused and the exercise of which may be reviewed on appeal or error. In Holder v. United States, 150 U. S. 91, our state is cited with others in support of the following principle there announced: "If a witness disobeys the order of withdrawal, while he may be proceeded against for contempt and his testimony is open to comment to the jury by reason of his conduct, he is not thereby disqualified on that ground merely, although the right to exclude under particular circumstances may be supported as within the sound discretion of the trial court." Wharton in his Criminal Evidence, 8th ed., sec. 446, further says that while a witness subjects himself to an attachment for contempt by his disobedience of such an order, yet his testimony would not necessarily be ruled out, even if the disobedience was wilful; but if the party calling the witness is to blame for the disobedience, then the witness may be excluded. A note to that section cites many cases on the subject, including some which hold it discretionary with the court; and quotes from 2 Phillips on Evidence, 5th Am. Ed., 744, to the effect that while it was formerly considered to be discretionary with the judge whether to permit the offending witness to be examined, it is now considered settled that disobedience of such an

order does not authorize the rejection of the testimony of
the witness.    In 1 Thompson on Trials, sec. 281, that author
states the modern rule as follows:  "The better opinion
now is that the violation of the rule by a witness, although
it will subject him to punishment for contempt of court,
will not deprive the party whose witness he is of the bene-
fit of his testimony, where the party himself is without
fault, and that the court cannot lawfully refuse to permit
the examination of the witness, although it will be a matter
for observation to the jury upon his evidence."    In Abbott's
Trial Brief, (Civil) 2nd ed., 133, that author, while conced-
ing the question is not free from doubt, says:  "The better
rule and the one seemingly supported by the weight of
authority prevents the court from depriving the party offer-
ing the witness of his testimony, where the party has not
himself participated in the witness's disobedience."    In 1
Bishop's New Criminal Procedure, sec. 1191, the following
conclusion is reached from the authorities:  "A witness's
disobedience of the order is contempt of court for which
he is punishable.    And if the party participated therein, the
court has a discretion also to reject his testimony; though
even then it will sometimes receive it on special cause
shown.    Yet a party who, with his attorney, is without
fault, cannot be punished for the fault of the witness.    He
is entitled to the evidence, and the court is compelled to
accept it; subject, of course, to observation to the jury."
That author then proceeds to say that while such is the law
in principle and on a part of the authorities, some courts,
less mindful of these reasons, consider it within their discre-
tion to reject the witness in all cases of disobedience to the
order.    In 2 Shinn's Common Law Pleading & Practice, sec.
824, after recognizing the former practice that the trial
judge in his discretion might exclude the testimony of the
disobedient witness, that author says:  "The rule seems
to be well settled now that while the violation of the order
by a witness will subject him to punishment for contempt,
it will not deprive the party, whose witness he is, of the
benefit of his testimony, where the party himself is with-

out fault, and the court cannot lawfully refuse the examination of the witness, though it will be matter for observation to the jury upon his evidence." State, ex rel., v. Thomas, 111 Ind. 515.

Considerations of natural justice support the rule above stated. A party cannot select his witnesses. He must call those persons who happen to have observed some fact which tends to establish his case. He cannot control their conduct or make them discreet. He is obliged to use them whether wise or foolish. A party to a suit on trial, especially a defendant charged with felony, as was the case here, may not have time carefully to watch each witness to see that he obeys the orders of the court. Such a defendant must be in the court room during the trial, and is not likely to know what his witnesses are doing outside the court room door while the trial proceeds. To deprive a party of his witness because of misconduct which the party has not caused, procured or permitted, would be to punish the innocent. It would furnish an unwilling or hostile witness with the means of avoiding the witness stand. The great object of a judicial trial of a question of fact is to ascertain the truth. The rule here contended for would exclude testimony which might be essential and even conclusive. To our minds it is not consonant with justice that a party shall thus be deprived of testimony. We therefore hold that it is not a reasonable exercise of discretion for a trial judge to deprive a party of a witness who has heard testimony in violation of an order excluding witnesses from the court room, unless such party or his attorney is in some way responsible for the violation of the order, or has connived at it or knowingly permitted it without objection, and that even in the latter case, a sound judicial discretion should lean to the admission of the testimony in all cases of doubt.

In the case at bar the state did not show that Sam Orvis disobeyed the order. The mere declaration by the state's attorney did not establish the fact nor cast the burden upon defendant to prove the allegation untrue. It was for the

state to support its objection by showing what had occurred. If the state's attorney saw the witness listening, he should have brought the matter to the attention of the court and opposite counsel at once, so that it might be stopped before any harm was done, and ought not to have an advantage because of his neglect or silence. If the state's attorney did not see it, then he was merely stating hearsay or rumor to the court. The statement of the state's attorney implies the witness had not listened that day, but only the day before, and therefore apparently had not heard Campbell testify. It is also to be observed there is not even a suggestion that defendant knew that the witness was listening outside the court room door, or was in any way responsible for it. The trial judge certified at the close of the bill of exceptions that it presented all the rulings of the court at the trial, excepted to by defendant, as they actually occurred, and that it contained all the evidence and proceedings at the trial. We are therefore compelled to treat this bill of exceptions as setting forth all that occurred at the trial on the subject of the refusal to permit Sam Orvis to testify for defendant.

No doubt in many cases it would be essential that a party seeking a new trial because of the improper exclusion of a witness should show by affidavit that the testimony of the excluded witness would have been material. But in this case the proof which had been admitted showed that Sam Orvis was present on April 15, and saw and pointed out the roll of wire just inside the fence of the prosecuting witness near where the roll had been left, which it was charged defendant had already stolen and put into his fence. As we understand the proofs and admissions of counsel, Sam Orvis is related to two of Watts' tenants, who with Watts, were the principal witnesses for the prosecution. It may well be that under those circumstances defendant could not readily obtain a full disclosure from him by his affidavit. Defendant had a right to assume that Campbell had testified to the truth, and to call Sam Orvis to corroborate him. Defendant also had a right to call Sam Orvis in order

to obviate any unfavorable comments to or by the jury which might arise from a failure to call him after his presence had been shown at the time and place where Campbell claimed to have seen the roll of wire. We hold that the proofs at the trial had sufficiently disclosed the importance and materiality of this testimony to defendant so that no further showing thereof was necessary upon the motion for a new trial. The case was close upon the facts. The guilt of the defendant was not a necessary conclusion from the proofs. The testimony of Sam Orvis added to that of Campbell might have prevented a conviction.

In our judgment, under the showing made, the court was not warranted in refusing to permit the witness to testify. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*