**George W. Ewing, Appellee, v. Simon Cox, Appellant.**

**Gen. No. 5329.**

1. TRIAL—*effect of disobedience of rule excluding witnesses.* A party should not be deprived of the testimony of a witness who without his knowledge has disobeyed a rule entered by the court excluding witnesses from the court room until they should be severally called.

2. EVIDENCE—*how proof of marriage made.* The certificate of the official who officiated at the ceremony, and not the certificate of the county clerk, is the proper record evidence to establish marriage.

Action for criminal conversation. Appeal from the Circuit Court of Stark county; the Hon. T. N. GREEN, Judge, presiding. Heard in this court at the April term, 1910. Reversed and remanded. Opinion filed October 18, 1910.

JOHN W. CREEKMUR, for appellant.

DAILY & MILLER and A. P. MILLER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This is an action for criminal conversation brought by George W. Ewing against Simon Cox. The declaration consists of one count and avers that on November 1, 1908, and at divers other times between that time and the bringing of the suit, the defendant debauched plaintiff's wife. There was a plea of not guilty and a verdict and judgment for plaintiff for $5,000 from which the defendant appeals.

After the jury were selected to try the case and before the opening statements were made the court made an order excluding all the witnesses from the court room until they should be severally called. There was a flat contradiction in the evidence as to certain facts, and some of these questions arose during the progress of the trial. Two witnesses were subpoenaed for appellant during the trial and were in the court room and heard part of the evidence before they were called to the witness stand. The appellee objected to their testimony because of the violation of the rule excluding the witnesses. The witnesses had no knowledge of the rule and neither appellant nor his attorney knew of the presence of the witnesses in the court room. Where witnesses have been excluded from the court room while other witnesses are testifying, and a witness disobeys such order, the court under some circumstances has a discretion to refuse to permit such witness to testify, but such discretion is a reasonable and not an arbitrary one and its abuse is subject to review. If a witness disobeys an order of the court he may be proceeded against for contempt but he is

not disqualified from testifying; a litigant not a party to such violation of a rule should not be punished by being deprived of the evidence of the witness and be cast in a law suit because of an innocent violation of a rule of court, which the party did not know was being violated and of which rule the witness had no knowledge. Kota v. People, 136 Ill. 655; Bulliner v. People, 95 Ill. 394; Bow v. People, 160 Ill. 438; Palmer v. People, 112 Ill. App. 527; 3 Ency. Evi. 240.

The appellee offered in evidence a certificate of the County Clerk of Stark county to prove the marriage of appellee to which an objection was made and overruled. The certificate is: "I, W. E. Nixon, Clerk of the County Court of said County, hereby certify that George W. Ewing was married to Miss Hattie M. Kerns in said County on the 20th day of September, 1886, by Rev. D. G. Stouffer, a minister of the Gospel * * * as appears by his return and certificate of marriage attached to the license granted by the Clerk of this Court and now on file in my office. In Witness Whereof," etc. This certificate was simply the conclusion of the Clerk. Sections 11 and 12 of chapter 89 of the Statute provide how a marriage may be proved, viz., by the certificate made by the official who officiated at the ceremonial or by a copy of the entry in the registry certified to by the county clerk under the seal of the county. The objection was improperly overruled. However, the marriage was proved by the testimony of the appellee without objection and it was practically proved by the appellant, so that the admission of the certificate was harmless error.

The evidence offered by appellee showed that he had been in the employ of the appellant at various times for twenty years working on a farm; that appellant was sixty-eight years of age, and had known Mrs. Ewing since she was a baby; that appellant lived a mile from Wyoming and in March, 1908, employed appellee for a year at $40 a month and was to furnish him a house or pay his house rent, and what milk he wanted for

family use; that appellee lived in a rented house until November, when he moved into a house of appellant in Wyoming. Appellant retained the use of the barn connected with the house for stabling his horse, as he went to town daily with milk and vegetables which he delivered to appellee and other housekeepers. Appellee left his house in the morning and was at appellant's farm during the day time. There was no proof of anything criminal before January 20, 1909, although appellant was seen to go to appellee's house almost daily and occasionally to go into the house. In October Fred Ewing, twenty years of age, a son of appellee claimed to have seen appellant give Mrs. Ewing, two dollars and thought "it was rather funny" and told his father. Appellee's proof is that on January 19, 1909, appellant having frequently indicated that he would like to have appellee leave his employ, and appellee having been made suspicious of his wife by what was told him by his son, appellee and his son laid a trap for appellant, by appellee telling appellant that he would like to be excused from work for a few days to go to Pekin to find employment at his trade as a baker; that appellant consented and appellee got $25 from appellant on the morning of January 20th; that appellant saw appellee cash the check in the bank, buy a ticket and leave on the train; that appellee came back that night by arrangement with his son, got off the train on the side away from the depot and went to the barn in a roundabout way so as not to be seen; that after the son ascertained that the family had retired appellee went into the house and slept upstairs in Fred's bed room, his wife sleeping down stairs with the children and not knowing that appellee was in the house; that he staid upstairs until nine o'clock the next morning, when his wife having gone out of the house to get coal he stole down stairs into a closet. On cross examination he testified the children had not gone to school when he went into the closet under the stairway but he didn't see them; he knew that the

four children were in the house some place but he did not know where. On the direct examination he had testified "after the litle girls had gone to school my son watched the opportunity to get me down stairs into the closet." Fred Ewing testified his mother had sent the sister to a relative with the little boy aged four and one-half years, for the day; that appellee's wife as she went after coal met a cousin, Rogers, and Fred Ewing pushed him into the closet with appellee, saying they were playing a joke on his mother; that when his mother came in Fred put on his coat and told her he was going up town, but only went half a block and stood watching for appellant and in about ten minutes he saw appellant go towards the house and enter the kitchen door; and Fred entered the house by another door and saw appellant and his mother in the kitchen; that appellant went into a bed room and Mrs. Ewing followed and appellee and Rogers came out of the closet and found appellant and Mrs. Ewing on the bed.

The evidence on the part of the appellant tends to show that there was a plot to which appellee and his wife were parties to get him into a compromising position; that there had been a death in his family and other members of his family had to leave to go to the funeral; that he was sick and had been to see a physician that morning who had ordered him to go to bed and he had heard appellee was in town and he went to his house to ask Mrs. Ewing to send her husband out to the farm; that she told him her husband had not returned and appellant said he knew he had, because he had been told so up town; that Mrs. Ewing asked him to go into the bed room to look at a bad spot in the ceiling; that she with a broom followed him in and was sweeping around and shut the door, and that appellee and Rogers came into the room; that they were not on the bed, but he was very heavily dressed with rubber boots, overshoes and overcoat and an unusual amount of underclothing, and that nothing improper occurred; that Dr. King had exam-

ined him that morning and found symptoms of pneumonia and prescribed for him.

There are very many unreasonable things in the evidence of appellee's witnesses; it is very strange that her son over twenty years of age would plot to have his mother trapped in the manner described by this evidence; the contradictions that appear in the appellee's evidence cast a serious doubt on his right to recover. It is not claimed that there was any act of adultery committed on the morning of January 20, but only that the conduct of the parties at that time justifies the belief that such relations had previously existed.

As this cause must be submitted to another jury we refrain from discussing the question whether the evidence proves connivance on the part of appellee and his wife to place the appellant in the compromising position appellee's evidence, if true, places appellant in.

Because of the error in sustaining objections to competent witnesses testifying, the judgment is reversed and the cause remanded.

*Reversed and remanded.*